OMNI-FOOD & FASHION, INC. ET AL., APPELLANTS, *v.* SMITH, EXRX., APPELLEE.

[Cite as Omni-Food & Fashion, Inc. *v.* Smith (1988), 38 Ohio St. 3d 385.]

(No. 87-1116—Submitted June 1, 1988—Decided September 21, 1988.)

386

*Cory, Leonard, Witter & Cheney,*
*W. C. Leonard* and *James K. Leonard,*
for appellee.

SWEENEY, J. In *Skidmore & Hall,*
*supra,* this court adopted the "discovery rule" for determining the accrual date for legal malpractice actions to the exclusion of any other standard. However, based on the logic, reasoning and fairness inherent in our recent pronouncement in *Frysinger* v. *Leech* (1987), 32 Ohio St. 3d 38, 512 N.E. 2d 337, which modified the accrual date of the statute of limitations set forth in R.C. 2305.11(A) for medical malpractice claims, this court is of the opinion that a similar modified rule should be established for claims sounding in legal malpractice.

R.C. 2305.11(A) states in relevant part: "[a]n action for * * * malpractice * * * shall be brought within one year after the cause thereof accrued * * *."

In *Skidmore & Hall, supra,* we patterned the "discovery rule" for legal malpractice actions after the "discovery rule" established for medical malpractice actions in *Oliver* v. *Kaiser Community Health Found.* (1983), 5 Ohio St. 3d 111, 5 OBR 247, 449 N.E. 2d 438. However, similar to the situation in *Oliver,* the alleged malpractice in *Skidmore & Hall, supra,* was not discovered until well after the attorney-client relationship had terminated. Thus, in *Skidmore & Hall,* we did not have occasion to explore the situation where the professional relationship continued after the client discovered the alleged malpractice injury. See *Frysinger, supra,* at 41, 512 N.E. 2d at 340.

Obviously, the facts *sub judice* present us with the same type of situation that was presented in *Frysinger.* Here, the professional relationship continued after the client discovered or should have discovered the malpractice injury.

*Clark & Perdue Co., L.P.A.,* and *Dale K. Perdue,* for appellants.

Hence, we find that as was the case in *Frysinger, supra,* there are situations such as the instant one where the "termination rule" for legal malpractice actions enunciated in *Keaton Co.* v. *Kolby* (1971), 27 Ohio St. 2d 234, 56 O.O. 2d 139, 271 N.E. 2d 772, and subsequently overruled in *Skidmore & Hall, supra,* should be considered where fundamental fairness compels the imposition of such a rule. The policy considerations and logic which led this court to modify the discovery rule and supplement it with the termination rule for medical malpractice actions in *Frysinger, supra,* should and must apply with the same force in legal malpractice actions.

In *Frysinger,* we reiterated the underpinnings of the termination rule as stated in *Wyler* v. *Tripi* (1971), 25 Ohio St. 2d 164, 167-168, 54 O.O. 2d 283, 285, 267 N.E. 2d 419, 421:

" 'The justification for the termination rule is that it strengthens the physician-patient relationship. The patient may rely upon the doctor's ability until the relationship is terminated and the physician has the opportunity to give full treatment, including the immediate correction of any error in judgment on his part. In short, it was thought that the termination rule is conducive to that mutual confidence which is essential to the physician-patient relationship.' " *Frysinger, supra,* at 41, 512 N.E. 2d at 340-341.

As we further noted in *Frysinger:*
"* * * [T]he termination rule encourages the parties to resolve their dispute without litigation, and stimulates the physician to mitigate the patient's damages. Those worthwhile goals still justify the termination rule, so long as it does not curtail the patient's right to sue after discovering the malpractice injury." *Id.* at 41, 512 N.E. 2d at 341.

In our view, this same reasoning should logically be applied in the attorney-client context. As we held in *Frysinger* with respect to medical malpractice claims, implementation of the termination rule in those situations where the client discovers or should have discovered the legal malpractice prior to the termination of the attorney-client relationship will encourage the parties to resolve their disputes without litigation and will stimulate the attorney to mitigate the client's damages. Strict adherence to the discovery rule, on the other hand, potentially encourages an unscrupulous attorney to conceal his or her malpractice until that time when the statute of limitations has run its course. In sum, we find that the better approach is one that fairly and flexibly applies either the termination rule or the discovery rule, depending on the facts of the particular case.

Having found that a *Frysinger*-type approach is most appropriate in determining the accrual date of R.C. 2305.11(A) in legal malpractice claims, our next consideration, as raised by defendant, is whether continued "general" representation should toll the statute of limitations, or whether the statute should be tolled with respect to acts of malpractice relating solely to particular undertakings or transactions. As appellee points out, the *Frysinger* standard limits the tolling of the statute of limitations to continuous treatment of a "condition." *Frysinger, supra,* paragraph one of the syllabus. Appellee submits that a similar approach should govern legal malpractice causes of action.

We believe that appellee's assertion in this regard is well-taken, and therefore hold that a similar standard should limit the tolling of the statute of limitations to continuous legal representation regarding a particular undertaking or transaction. In light of our

holding in *Frysinger, supra,* such a standard appears to be both prudent and fundamentally fair to all parties concerned. In our view, a different standard could defeat the purpose of the statute of limitations where, for example, a client with knowledge of the attorney's malpractice may unduly perpetuate the attorney's potential liability and exposure to suit.

By permitting the particular circumstances of an attorney-client relationship to guide a court on whether to apply the discovery rule or termination rule, the proper balance is struck between fairness and judicial economy, and the desire of the General Assembly to limit the time period within which this type of action may be brought.

Therefore, we modify the standard we established in *Skidmore & Hall, supra,* and hold that under R.C. 2305.11(A), a cause of action for legal malpractice accrues and the one-year statute of limitations commences to run either when the client discovers or, in the exercise of reasonable diligence should have discovered, the resulting damage or injury, or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.

Given our holding today, it should be pointed out that the question of when an attorney-client relationship for a particular undertaking or transaction has terminated is necessarily one of fact.

In addition to the modification of *Skidmore & Hall, supra,* heretofore elucidated, we further believe that the "discovery rule" aspect of determining the accrual date of R.C. 2305.11(A) for legal malpractice claims is in need of further refinement. In *Hershberger* v. *Akron City Hosp.* (1987), 34 Ohio St. 3d 1, 516 N.E. 2d 204, this court delineated the factors to be considered in order to determine the date of discovery in a medical malpractice action.

We are of the opinion that the same justifications set forth in *Hershberger, supra,* for determining the date of discovery in a medical malpractice action, are equally compelling in the legal malpractice context.

Therefore, in formulating a *Hershberger*-type standard for a legal malpractice claim, we hold that for the purposes of determining the accrual date of R.C. 2305.11(A) in a legal malpractice action, the trial court must explore the particular facts of the action and make the following determinations: when the injured party became aware, or should have become aware, of the extent and seriousness of his or her alleged legal problem; whether the injured party was aware, or should have been aware, that the damage or injury alleged was related to a specific legal transaction or undertaking previously rendered him or her; and whether such damage or injury would put a reasonable person on notice of the need for further inquiry as to the cause of such damage or injury.

We believe that the foregoing standards are the most comprehensive in guiding both bench and bar with respect to the accrual date of the statute of limitations in a legal malpractice action. The fact that these standards closely parallel those previously announced in the medical malpractice area will promote predictability and fairness in determining the timeliness of these causes of action.

Accordingly, based on these reasons, the judgment of the court of appeals is reversed, and the cause is remanded to the trial court for further proceedings in accordance with this opinion.

*Judgment reversed and cause remanded.*

MOYER, C.J., LOCHER, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.