**PERSONAL SERVICE INSURANCE COMPANY**
**et al., Appellants and Cross–Appellees,**

**v.**

**QUANDT et al., Appellees and Cross–Appellants.**

[Cite as *Personal Serv. Ins. Co. v. Quandt* (1994), 98 Ohio App.3d 121.]

Court of Appeals of Ohio,
Franklin County.

No. 94APE03–372.

Decided Sept. 20, 1994.

*Shuler, Plank, Morgan & Brahm* and *Gordon P. Shuler*, for appellants and cross-appellees.

*Harris, Carter, Mahota & Mazza, Douglas O. Metz* and *John P. Mazza*, for appellees and cross-appellants.

TYACK, Judge.

On October 27, 1992, Personal Service Insurance Company ("PSIC") and the city of Parma ("Parma") filed a legal malpractice suit against Robert G. Quandt, James E. Powell and the law firm of Quandt, Giffels, Buck & Rodgers Co., L.P.A. ("the Quandt firm"). PSIC had insured Parma in a lawsuit in Cuyahoga County, Ohio, which lawsuit has resulted in a jury verdict of over $1 million against the city. The Quandt firm had been retained to represent Parma on appeal and on other matters involving the case subsequent to trial.

Eventually, PSIC, Parma and the Quandt firm filed cross-motions for summary judgment in the legal malpractice action. The trial court found that malpractice

had occurred, but that the applicable statute of limitations had expired and that the plaintiffs in the legal malpractice action had failed to prove damages resulting from the malpractice. Therefore, the trial court in the malpractice action granted judgment on behalf of the Quandt firm and the two individually named attorneys. PSIC and Parma have pursued a timely appeal, assigning two errors for consideration:

"1. The trial court erred by granting summary judgment in favor of defendants.

"2. The trial court erred by denying plaintiffs' cross-motion for summary judgment; at a minimum, summary judgment should have been granted in favor of plaintiffs on all but the statute of limitations issue."

The Quandt firm and the named counsel have pursued a cross-appeal, assigning two errors for our consideration:

"I. The trial court erred in determining that defendants-appellee[s] committed malpractice.

"II. The trial court erred in finding that had plaintiffs shown that the court would have heard the case, they would be entitled to a reduction of the verdict to a maximum of $85,000 and a minimum of $11,000, or a new trial."

Additional pertinent facts will be set forth during the discussion of the respective assignment of error.

PSIC and Parma argue under their first assignment of error that the statute of limitations for pursuing the legal malpractice case had not expired. All parties agree that we should be guided in our resolution of this issue by the syllabus of *Omni–Food & Fashion, Inc. v. Smith* (1988), 38 Ohio St.3d 385, 528 N.E.2d 941. The two paragraphs of the syllabus read:

"1. Under R.C. 2305.11(A), a cause of action for legal malpractice accrues and the one-year statute of limitations commences to run either when the client discovers or, in the exercise of reasonable diligence should have discovered, the resulting damage or injury, or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later. (*Skidmore & Hall v. Rottman* [1983], 5 Ohio St.3d 210, 5 OBR 453, 450 N.E.2d 684, explained and modified.)

"2. For the purposes of determining the accrual date of R.C. 2305.11(A) in a legal malpractice action, the trial court must explore the particular facts of the action and make the following determinations: when the injured party became aware, or should have become aware, of the extent and seriousness of his or her alleged legal problem; whether the injured party was aware, or should have been aware, that the damage or injury alleged was related to a specific legal transac-

tion or undertaking previously rendered him or her; and whether such damage or injury would put a reasonable person on notice of the need for further inquiry as to the cause of such damage or injury."

In the *Omni–Food* case, attorneys allegedly failed to register shares of stock for Omni–Food & Fashion, Inc. The failure resulted in a class action suit brought by several holders of stock certificates. A default judgment for $7.5 million was rendered on the class action. The attorneys continued their involvement in representing the corporation and advised the corporation to file for bankruptcy.

In the representation of PSIC and Parma, the Quandt firm failed to file appellate briefs in one of two similar cases pending before the Supreme Court of Ohio on direct appeal. The Supreme Court of Ohio had accepted a discretionary direct appeal of the original litigation involving Parma under case No. 89–116. The same issues were also before the Supreme Court of Ohio in case No. 89–277 as a result of the certification of a conflict by the Eighth District Court of Appeals. The Quandt firm filed briefs in the certified case, but failed to do so in the case accepted by the Supreme Court for discretionary review. In April 1990, the Supreme Court of Ohio dismissed the case which had been accepted for discretionary review because of a failure to prosecute the appeal. At about the same time, the Supreme Court dismissed the certified case as having been "improperly certified." The Supreme Court subsequently overruled a motion to reconsider the dismissal of the certified case.

The Quandt firm continued to represent Parma and PSIC on the underlying case until the fall of 1991. On October 11, 1991, Lloyd C. Nicol, general counsel for PSIC sent a letter to the Quandt firm, which read:

"As you are well aware, The Personal Service Insurance Co., to date, has paid to the plaintiffs in the above-referenced lawsuit, a total amount of $1,910,144.68. Based upon your advice and evaluation of the merits of the appeal prior to the Supreme Court dismissing the appeal based upon certification sua sponte, we took the position that the case had a settlement value of $750,000. Of course, at that time, we did not know that your office had failed to file a brief in the appeal which was made by direct application to the Supreme Court.

"After both appeals were dismissed by the Court, we of course, were left with no other choice than to pay the judgment plus the accrued interest. Once that took place we felt that we had paid a very substantial sum of money which we should not have been required to pay. At that time, however, in order to prevail on any malpractice action against your office we would have had to first of all establish that an act of malpractice had been committed, and then secondly, somehow establish that had the Supreme Court ruled on the issues presented on appeal the rulings would have been favorable to our position.

"We felt at that time the failure to file the brief was a clear act of malpractice, but trying to prove how the Supreme Court would have ruled on the assignments of error would at the best have been difficult. However, now that the Supreme Court has rendered its decision in *E[b]erly v. A–P Controls Inc.* (1991), 61 Ohio St.3d 27 [572 N.E.2d 633], we are now able to support our position with regar[d] to how the Court would have ruled on at least one of the assignments of error.

"We are therefore of the opinion that The Personal Service Insurance Co. sustained a substantial loss due to the errors committed by your office.

"This is not to infer that we believe that you or anyone in your office is incompetent as an attorney, but merely that a mistake was made which resulted in a substantial loss to our Company. Since we do not believe it is fair and equitable that The Personal Service Insurance Co. should have to ultimately sustain this entire loss, we are left with no alternative other than to look to your office as sharing in the responsibility.

"While legal action is a possibility, our desire is to resolve the matter in an amicable fashion. To that end, we would suggest that you provide your professional liability carrier with the information necessary for them to evaluate the claim and to then provide us with the opportunity to meet with them to explore resolution.

"We of course invite your response to this letter."

Robert G. Quandt responded on behalf of the firm with a letter which read:

"Enclosed please find copies of four (4) judgment entries made in the above-captioned matter by Judge Nugent. These four rulings resolve all of the motions which had been pending since last fall.

"Our motion to reduce the judgment pursuant to the set-off provisions of R.C. 2744.05(B) was denied. Such a denial by the trial court was fully expected. The Supreme Court of Ohio ruled that the statute may not be applied retroactively in Vogel v. Wells (1991), 57 Ohio St.3d 91 [566 N.E.2d 154], a case decided after our motion was filed. The remaining three rulings of the trial court are in our favor.

"First, the court denied plaintiffs' motion for costs and sanctions pursuant to R.C. 23232.51, finding that '[n]othing presented herein creates the issues that [Parma] did not have a proper basis and belief to prosecute each appeal.' Second, the trial court ruled that plaintiffs were only entitled to recover costs incurred on the appeal to the Supreme Court. As these costs were paid by the appella[nt], City of Parma, the award ought to amount to nothing; that is to say, the appellees did not incur statutory costs in this appeal. Lastly, and of the most significance, the court held that interest on the judgment is simple interest. Last year the amount of the judgment, plus simple interest calculated to the date of

payment, was paid to the plaintiffs. Therefore, no further payment ought to be owning [*sic*].

"What remains to be accomplished is to secure a satisfaction of judgment and copies of the probate court's approval of the judgment. We are prepared to draft and file the necessary documents upon receipt of your instructions to proceed.

"With respect to any further professional services to be rendered by our firm on behalf of your insureds and your good company, we are concerned, in light of your correspondence of October 11, 1991 and the matters set forth therein, that our further representation may be problematic. We are ready, willing and able, and, indeed, eager to conclude both the Solitaria matter and the matter of Penny Pincher Foods, et al., v. The City of Willoughby. We respectfully request that you give these issues your full consideration and advise us accordingly. Please accept this correspondence in the manner in which it is intended; that is, so that all concerned may be certain that your have been advised of the issue and that you may fully consider your interests.

"Please do not hesitate to contact the undersigned if your wish to discuss this matter. We will await your kind advices."

Contrary to the findings of the trial court, the statute of limitations did not begin to run until November 4, 1991 at the earliest. As of that date, the Quandt firm still represented Parma and PSIC in the litigation which had resulted in the substantial verdict. The ties between the representation in the issues on appeal and the other legal matters still to be resolved were sufficiently close to consider the representation for the "particular transaction" for purposes of paragraph one of the syllabus of *Omni–Food & Fashion, Inc.* As a result, the statute of limitations did not expire until November 1992 at the earliest and had not expired when the malpractice action was commenced. Therefore, the first basis for the trial court's defense verdict in the legal malpractice case was incorrectly decided.

■ We next turn to the second basis for the trial court's judgment, namely that PSIC and Parma did not prove damages resulting from the legal malpractice.

In order to avoid a defense verdict as a result of the filing of a defense motion for summary judgment, PSIC and Parma had the burden of going forward with evidence which showed that damage had resulted from the malpractice of the Quandt firm. To meet this burden, PSIC and Parma filed a lengthy affidavit from Lloyd C. Nicol, the general counsel for PSIC. Nicol swore that he was a licensed attorney who had spent over fifteen years doing insurance defense work before taking the position of general counsel for PSIC. He further swore to his opinion that the Quandt firm had been guilty of legal malpractice when it failed to file briefs in the one case pending before the Supreme Court of Ohio. He also

stated in his affidavit that the malpractice "was the proximate cause of the damages suffered by Personal Insurance Company and the city of Parma."

Affidavits filed in support of and defense of motions for summary judgment are governed by Civ.R. 56(E), which reads:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

For PSIC and Parma to have been damaged by the dismissal of the discretionary appeal to the Supreme Court of Ohio, they must demonstrate that, more likely than not, they would have prevailed in the Supreme Court of Ohio on one or both of the issues pending. The propositions of law set forth in the memorandum in support of jurisdiction which had been filed by the Quandt firm under case No. 89–116 were not placed in the record, although the affidavit of Nicol implies that the same issues were presented by both cases. The first issue involved the right of the plaintiffs in the Cuyahoga County case to recover amounts in excess of $11,000 when the demand in the complaint and amended complaint read:

"Wherefore, Plaintiff demands judgment against the Defendants jointly and severally in an amount in excess of $11,000.00 such as will justly and fairly compensate them, and for the costs of the action herein."

As to this issue, the case law is remarkably sparse. PSIC and Parma point to no appellate case either before or after their litigation which is directly on point. The affidavit of Nicol, although demonstrating competence in insurance defense work, does not demonstrate an ability to forecast the future rulings of appellate courts on new legal issues. Therefore, summary judgment as to the jury demand issue was appropriate.

The second issue apparently pending before the Supreme Court of Ohio involved the right of contribution between joint tortfeasors and the right of a joint tortfeasor to jury interrogatories to ascertain the appropriate contribution. As to this issue, PSIC and Parma assert that the case of *Eberly v. A–P Controls,*

*Inc.* (1991), 61 Ohio St.3d 27, 572 N.E.2d 633, demonstrates their probability of success. Paragraphs two, three and four of the syllabus to that case read:

"2. Former R.C. 2315.19 provided for apportionment of negligence only among parties to the action.

"3. Former R.C. 2315.19 provided for several, or allocated, liability among joint tortfeasors party to an action based upon comparative fault; however, several liability is triggered only upon a finding of negligence attributable to the plaintiff.

"4. When a jury returned answers to interrogatories under former R.C. 2315.19(B) and found no negligence attributable to the plaintiff, joint and several liability would lie, and the answer to the interrogatory apportioning fault among multiple tortfeasors set forth contribution rights among them pursuant to R.C. 2307.32(E)."

Counsel for the Quandt firm respond that the *Eberly* case involved a situation where the defendants in the tort case had filed cross-claims alleging a right of contribution, as opposed to the situation in the case involving Parma and PSIC. Counsel for the Quandt firm asserts that no cross-claims were pending, so no right of contribution could be pursued.

Counsel further asserts that the vote of the participating members of the Supreme Court of Ohio in the certified case indicates that PSIC and Parma would not have prevailed. Of the seven individuals who were members of the Supreme Court of Ohio, four voted to dismiss the case as improperly certified (Justices A.W. Sweeney, Douglas, Wright and Resnick). Two (Chief Justice Moyer and then Justice H. Brown) voted to affirm the judgment adverse to PSIC and Parma. Justice Holmes did not participate. This dismissal occurred after two rounds of briefing and oral argument. The second round of briefs included the following two additional propositions of law:

"A. Although not pleaded in an answer, nor by amendment to the pleadings pursuant to Civ.R. 15, a party is entitled to a jury instruction and interrogatories on the issue of comparative negligence where the issue was tried by the express and implied consent of the parties.

"B. Where one of two defendants pleads the affirmative defense of contributory negligence in its answer, both defendants are entitled to a jury instruction and interrogatories pursuant to R.C. 2315.19."

A review of the brief further indicates that Parma was the named defendant in the original tort litigation and that it did not plead contributory or comparative negligence. Thus, the issue before the Supreme Court of Ohio became whether a named-defendant which has neither pled comparative negligence nor filed a cross-

claim for contribution could have its liability limited by former R.C. 2315.19, which read in pertinent part:

"(B) In any negligence action in which contributory negligence is asserted as a defense, the court in a nonjury trial shall make findings of fact, and the jury in a jury trial shall return a general verdict accompanied by answers to interrogatories, that shall specify:

"(1) The total amount of damages that would have been recoverable by the complainant but for his negligence;

"(2) The percentage of negligence that directly and proximately caused the injury, in relation to one hundred per cent, that is attributable to each party to the action.

"(C) After the court makes its findings of fact or after the jury returns its general verdict accompanied by answers to interrogatories, the court shall diminish the total amount of damages recoverable by an amount that is proportionately equal to the percentage of negligence of the person bringing the action, which percentage is determined pursuant to division (B) of this section. If the percentage of the negligence of the person bringing the action is greater than the total of the percentages of the negligence of all other persons from whom recovery is sought, which percentages are determined pursuant to division (B) of this section, the court shall enter a judgment for the persons against whom recovery is sought." 138 Ohio Laws, Part I, 594–596.

Although the original tort case against Parma was clearly tried with the issue of comparative negligence involved from start to finish, neither Nicol nor anyone else except a member of the Supreme Court of Ohio could say that the Supreme Court would have significantly reduced the award to the estate of a deceased child to the benefit of a party that did not allege comparative negligence in its pleadings and therefore had not asserted contributory negligence as a defense as arguably required by R.C. 2315.19. Clearly, two of the members of that court would have affirmed the appellate judgment adverse to Parma and PSIC. A suggestion that four of the remaining five members would have allowed a party that did not personally assert the defense which is a prerequisite to receiving the benefit of R.C. 2315.19 to receive the benefit anyway seems an unlikely suggestion. The most likely occurrence is that the Supreme Court of Ohio would have affirmed or would have found the review of the discretionary case to have been improvidently granted at the same time that the court found the other case to be "improvidently certified."

As a result, the evidence before the trial court in the malpractice case did not support a finding that the malpractice damaged Parma and PSIC. Therefore, the judgment for the defense in the malpractice case was appropriate.

The first assignment of error is overruled.

In light of our ruling on the first assignment of error, the remaining assignments of error are moot. We therefore will not address them separately. We simply affirm the judgment of the trial court.

*Judgment affirmed.*

STRAUSBAUGH, J., concurs.

BOWMAN, J., dissents.

DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, sitting by assignment.

BOWMAN, Judge, dissenting.

Being unable to agree with the majority, I respectfully dissent.

The majority concludes that, by overruling appellants' first assignment of error, it is not necessary to address the remaining issues; however, I feel it is appropriate to consider the first assignment of error on cross-appeal. The Quandt firm contends that the trial court erred by finding the firm committed malpractice by failing to file a brief in case No. 89–116, in which discretionary review had been granted, because the same issues were raised in case No. 89–277, the case certified by the Eighth District Court of Appeals. I disagree.

In deciding a case certified to the Ohio Supreme Court, pursuant to Section 3(B)(4), Article IV, Ohio Constitution, the court must first decide whether "an actual conflict between appellate judicial districts [exists] on a rule of law before certification of a case to the Supreme Court for review and final determination is proper." *Whitelock v. Gilbane Bldg. Co.* (1993), 66 Ohio St.3d 594, 613 N.E.2d 1032, paragraph one of the syllabus. Absent such a conflict, the case must be dismissed by the court. Thus, the threshold issue to be addressed in 89–277, and the only issue decided by the Supreme Court, was the existence or non-existence of a conflict. Given the frequency with which cases are dismissed on the basis of a finding that no conflict exists among the various appellate districts (see discussion in *Whitelock,* generally), it was reasonably foreseeable this case would also be dismissed. The Quandt firm's failure to file a brief in case No. 89–116 was clearly malpractice. The Supreme Court overruled a motion to consolidate these two appeals and considered the cases as separate matters to be determined by the court. The Quandt firm's failure to file a brief prevented appellants from having their case reviewed by the court. The first assignment of error on cross-appeal should be overruled.

The majority concludes that the statute of limitations for appellants' claim for legal malpractice began to run November 4, 1991, at the earliest. While this

could be found to be the correct date, it is not a decision to be made in the first instance by this court. In *Omni–Food & Fashion, Inc. v. Smith* (1988), 38 Ohio St.3d 385, 528 N.E.2d 941, the court held the statute of limitations for legal malpractice starts to run on the date of discovery or at the termination of the attorney-client relationship for the particular transaction or undertaking, whichever is later. Here, the termination rule would appear to be applicable and the court in *Omni–Food* stated, at 388, 528 N.E.2d at 944:

"[I]t should be pointed out that the question of when an attorney-client relationship for a particular undertaking or transaction has terminated is necessarily one of fact."

The affidavits submitted on behalf of the parties create conflicting facts from which different reasonable conclusions could be drawn as to the scope of services for which appellants retained appellee, and when the services terminated. Therefore, the matter should be remanded to the trial court for determination of this factual issue.

I further disagree with the majority as to the issue of whether appellants showed they were damaged by the Quandt firm's malpractice. In the decision the majority states:

"In order to avoid a defense verdict as a result of the filing of a defense motion for summary judgment, PSIC and Parma had the burden of going forward with evidence which showed that damage had resulted from the malpractice of the Quandt firm. * * *"

However, whether or not appellants were damaged is not a question of fact for which appellants had the burden of producing evidence so as to avoid summary judgment; rather, it is a question of law to be decided by the trial court and now by this court. *Jablonski v. Higgins* (1983), 6 Ohio Misc.2d 8, 6 OBR 548, 453 N.E.2d 1296; *Tohline v. Cent. Trust Co., N.A.* (1988), 48 Ohio App.3d 280, 549 N.E.2d 1223. Whereas malpractice at the trial level creates an anomaly of an "trial within a trial," malpractice at the appellate level creates an "appeal within an appeal." Thus, whether or not Lloyd Nicol would qualify as an expert to "forecast the future rulings of appellate courts on new legal issues" is not the standard by which the trial court's grant of summary judgment should be reviewed. Rather, this court must address the issues raised in appellants' appeal to the Supreme Court and decide those issues.

In *Belfer v. Spiegel* (1984), 18 Ohio App.3d 64, 18 OBR 178, 480 N.E.2d 825, the court stated that a plaintiff in an action for appellate malpractice must show a reasonable possibility of a favorable decision.

In *Eberly v. A–P Controls, Inc.* (1991), 61 Ohio St.3d 27, 572 N.E.2d 633, the court held, at paragraph three of the syllabus:

"Former R.C. 2315.19 provided for several, or allocated, liability among joint tortfeasors party to an action based upon comparative fault; however, several liability is triggered only upon a finding of negligence attributable to the plaintiff."

The court further stated, at 35, 572 N.E.2d at 639:

"R.C. 2315.19 provided for several, or allocated, liability among joint tortfeasors who are parties to an action based upon comparative fault; however, several liability was triggered only upon a finding of negligence on the part of the plaintiff. R.C. 2315.19(A). Accordingly, R.C. 2315.19(B) required interrogatories allocating fault whenever the plaintiff's contributory negligence was pled as a defense. * * *"

While the court did state that cross-claims for contribution *should* be pled, such pleading was not made mandatory by the decision in *Eberly*. Here, apparently Parma did not raise the issue of decedent's contributory negligence, but its codefendant did. There is nothing in *Eberly* to say that the failure of one codefendant to raise the issue of contributory negligence in any way lessens the duty of the trial court to properly instruct the jury and to provide interrogatories to require an allocation of negligence between defendants when the issue of contributory negligence has been raised by another party to the action and the issue was tried throughout the case. In fact, decedent here had been found to be thirty percent contributorily negligent. Thus, while *Eberly* is not necessarily determinative, the issues raised therein suggest that, had the Quandt firm timely filed a brief, a favorable result could have been obtained on behalf of appellants.

For the same reasons, I disagree with the majority's conclusion as to the issue of whether the plaintiffs, in the underlying litigation, would have been limited in their recovery to the amount of damages set forth in their prayer, $11,000. Again, the majority finds Nicol's affidavit insufficient to create an issue to be tried and, therefore, insufficient to avoid summary judgment. This is the incorrect standard, as the issues presented are questions of law to be determined by the court.

In *Bishop v. Grdina* (1985), 20 Ohio St.3d 26, 28–29, 20 OBR 213, 214–215, 485 N.E.2d 704, 706, the Supreme Court stated:

"Civ.R. 54(C) does not draw a distinction between compensatory and punitive damages. Both types of damages are subject to the rule. A major purpose of the limitation in the rule is to put the defendant on notice prior to trial as to his potential liability. The Ohio rule was specifically drafted to be distinguished from its federal counterpart which permits an award that exceeds the prayer. * * *"

Thus, even if appellants would not have succeeded on their claim as to an allocation of negligence between defendants, they could have succeeded on their

Civ.R. 54(C) claim and the judgment would have been reduced. Therefore, appellants were damaged by the Quandt firm's failure to file a brief.

I further disagree with the majority that, in determining these issues, it is the function of the court to decide how individual justices of the Ohio Supreme Court, or individual judges of an appellate court, would rule on a particular issue. Rather, it is the function of the court to analyze the legal principles involved and apply them to the facts of a particular case. It is not the court's function to second-guess the outcome in the Ohio Supreme Court. Regardless, the Ohio Supreme Court has not addressed the issues raised by a claim for legal malpractice at an appellate level. Therefore, it would be suggested that this is an appropriate case for the Ohio Supreme Court to address these issues.

Therefore, I would sustain appellants' first assignment of error and remand this matter to the trial court to make a factual determination as to when the statute of limitations began to run. If the trial court finds the action was timely brought, I would instruct the trial court to enter judgment in favor of appellants. The assignments of error on cross-appeal should be overruled.