DECISION AND JOURNAL ENTRY
The Summit County Court of Common Pleas granted summary judgment to John M. Gatien, James W. Slater, and Slater Zurz (collectively "Slater Zurz") on their request to dismiss Mark Sinsky's malpractice complaint against them, as time barred. Sinsky has appealed from the grant of summary judgment dismissing his claim. On appeal Sinsky has asserted that the trial court erred when it granted summary judgment. We sustain Sinsky's assignment of error and reverse the judgment of the trial court.
 I
Slater Zurz represented Sinsky in a divorce action. On May 28, 1999, Sinsky filed a malpractice action against Slater Zurz for what he asserted were failings in their representation of him during his divorce. According to his complaint, the malpractice by attorneys from Slater Zurz cost him in excess of $65,000. Slater Zurz filed a counterclaim asserting that Sinsky's malpractice complaint "was instituted merely to harass and maliciously injure [them] for the improper purpose of procuring funds from [them] by impugning their professional reputations and abilities." They requested $75,000 in damages.
Slater Zurz moved for summary judgment on Sinsky's complaint, asserting that it was barred by the statute of limitations.[1] In support of their motion, they attached documents that they asserted are copies of (1) the Complaint for Divorce; (2) a transcript of a hearing held on March 10, 1998; and (3) the Decree of Divorce, to which is attached "an electronic mail message sent from Sinsky to Attorney Melissa Graham-Hurd * * * on May 26, 1998." The e-mail, apparently from Sinsky to Graham-Hurd states, "I have terminated my legal representation and decided to represent myself to finalize the divorce from your client."
Sinsky opposed the motion for summary judgment, and submitted a supporting affidavit asserting directly or within attached documents that (1) Graham-Hurd, counsel for Sinsky's ex-wife had refused to talk to him as long as he was represented by counsel; (2) Graham-Hurd informed Sinsky that Gatien, his counsel, would not return her calls; (3) Sinsky "told [Graham-Hurd] I fired Gatien so she would talk to me and finish this stuff;" (4) Slater wrote a letter to the Graham-Hurd on Sinsky's behalf on May 27, 1998, arranging a meeting for June 12, 1998; (5) on June 9, 1998, Sinsky wrote a letter to Robert Mihiylov, an attorney, in which he explained and that "I am going to dismiss [Slater Zurz] and I am asking that you take over the divorce case for me;" and (6) he fired Slater Zurz in writing on June 10, 1998.
 II
Sinsky has asserted that the trial court improperly granted summary judgment against him. This court reviews a grant of summary judgment de novo, employing the same standard as would be used by the trial court. McCay v. Cutlip (1992), 80 Ohio App.3d 487,491. See, also, Smiddy v. Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. The party seeking summary judgment bears the responsibility of informing the court of the basis of the motion, and of pointing to pleadings and specific evidentiary documents that have been filed in the matter which it believes "demonstrate the absence of a genuine issue of material fact." Dresher v. Burt
C(1996), 75 Ohio St.3d 280, 293. If, and only if, the moving party satisfies its initial burden, the nonmoving party has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial. Id. Summary judgement is proper if our review of the record properly before the trial court establishes that:
 (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
 Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
In a legal malpractice action, the statute of limitations begins to run "either when the client discovers or, in the exercise of reasonable diligence should have discovered, the resulting damage or injury, or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." Omni-Foods Fashion, Inc.v. Smith (1988), 38 Ohio St.3d 385, paragraph one of the syllabus. The statute of limitations is one year. Id.
Both parties argued below that the later event was the termination of the attorney-client relationship.[2] The determination of whether an attorney client relationship has ended is necessarily one of fact, to be decided by the trier of fact.Mobberly v. Hendricks (1994), 98 Ohio App.3d 839, 843, quotingColumbus Credit Co. v. Evans (1992), 82 Ohio App.3d 798, 804;Omni-Food Fashion, Inc., 38 Ohio St.3d at 388. Nonetheless, one party or the other may undertake affirmative actions that are so inconsistent with a continued relationship that the question of when an attorney-client relationship has ended may be taken away from the trier of fact, and decided as a matter of law. SeeMobberly, 98 Ohio App.3d at 843.
In their motion, Slater Zurz asserted that Sinsky terminated his relationship with them on May 26, 1998, when he sent an e-mail to his ex-wife's counsel in which he stated that he had terminated his attorney-client relationship with Slater 
Zurz. Because Sinsky filed his malpractice complaint on May 28, 1999, Slater Zurz contended that it should be dismissed as time barred. If this e-mail clearly and unambiguously signaled the end of the attorney client relationship, then there is no genuine issue of material fact that the complaint is barred by the statute of limitations. Because the record, at the time the motion was filed, clearly indicated that the attorney-client relationship had ended and was devoid of any evidence that it was terminated at a later date, Slater Zurz met their burden under Dresher.
Sinsky responded by providing the court with a copy of a letter he wrote on June 9, 1998, to an attorney he hoped to hire to complete the work on his divorce. In that letter, he explained that he was "going to dismiss [Slater Zurz]." (Emphasis added.) In addition, he also provided a copy of a letter to Slater Zurz on June 10, 1998, expressing his unhappiness with their handling of the case and dismissing them. In the June 9, 1998, letter Sinsky also plausibly explained why he informed Graham-Hurd on May 26, 1998, that he had already fired Slater and Zurz. He had attempted to speak with Graham-Hurd, and she correctly informed him that she was not permitted to not speak with him while he was represented by counsel. She also informed him that his counsel was refusing to return her calls. In order to "finish this stuff" he told her he "fired Gatien so she would talk to me." The e-mail also indicates that Sinsky intended to represent himself, yet within two weeks had apparently secured other counsel. This bolsters Sinsky's assertion that his statements to Graham-Hurd were made solely for the purpose of convincing her to speak with him, rather than as a correct description of his current relationship with Slater Zurz. Finally, Slater Zurz continued to act as Sinsky's counsel after May 26, 1998, as evidenced by a letter they sent on his behalf to Graham-Hurd arranging a June 12, 1998 meeting.
The date of termination of the attorney-client relationship is a material fact because the question of whether or not Sinsky has a viable claim depends on it. Slater Zurz asserted that the relationship terminated on May 26, 1998, and Sinsky asserted that it terminated on June 10, 1998. Sinsky's statement, in his May 26, 1998 e-mail, that he had terminated his relationship with Slater Zurz, viewed in conjunction with his assertion on June 9, 1998, that he was going to fire them, and his letter a day later purporting to do so, is not a clear and unambiguous act terminating the attorney-client relationship. A reasonable interpretation of Sinsky's actions is that he was unhappy with his current counsel. He was concerned enough about the progress of his divorce that he tried to speak with opposing counsel Graham-Hurd. When she refused, he did what he knew would permit her to speak with him; he informed her that he was no longer represented by counsel. Simultaneously he began seeking new counsel and terminated his agreement with Slater Zurz only after he made arrangements to retain new counsel, in order to ensure continuous representation in his divorce action.
The evidence in this case does not clearly and unambiguously establish a date on which the attorney-client relationship terminated. The conflicting evidence, viewed most strongly in favor of the non-moving party, permits more than one rational conclusion and, thus, Slater Zurz is not entitled to judgment as a matter of law.[3] Sinsky's assignment of error is sustained.
 III
Because Slater Zurz failed to establish that there was no genuine issue of material fact, Sinsky is correct in his assertion that the trial court improperly granted summary judgment. His assignment of error is sustained, and the judgment of the trial court is reversed and the cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellees.
Exceptions.
 ___________________________ WILLIAM R. BAIRD
FOR THE COURT, BATCHELDER, P.J., CONCURS.
[1] Slater Zurz properly asserted this affirmative defense in their answer to Sinsky's complaint. See Civ.R. 8(C).
[2] Sinsky suggested on appeal that it was still possible for him to prevail, even if the relationship terminated on May 26, 1998, because the divorce was not final until May 29, 1998. According to Sinsky, the harm was not done until the final judgment and that he had no reason to be aware of the harm done until he later obtained new counsel. Because it is not dispositive, we do not evaluate whether there remains a genuine issue of material fact as to the date on which Sinsky discovered, or should have discovered, that he was injured by his former counsel.
[3] The dissent characterizes our conclusion as imposing a practical requirement that a client actually notify his attorney that he is terminating the attorney-client relationship before the relationship is dissolved. This is a mischaracterization. What we have determined, based on the evidentiary material presented by these two litigants, is that Sinsky's act, of telling opposing counsel that he had fired his attorney, was not so unambiguous, given the surrounding circumstances, that a reasonable trier of fact could not ultimately conclude that Sinsky's act did not terminate the attorney-client relationship. This is a far cry from imposing an actual notice requirement. Following our remand, the trier of fact is still free to conclude either that Sinsky's act terminated the relationship, even without actual notice to hisattorney, or that it did not. What the trial court may not do is to remove that factual question from the trier of fact by means of a summary proceeding, in light of conflicting and properly presented factual assertions.