DANIEL et al., Appellants,

v.

McKINNEY, Appellee.

[Cite as *Daniel v. McKinney*, 181 Ohio App.3d 1, 2009-Ohio-690.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22620.

Decided Feb. 13, 2009.

Charles W. Slicer Sr., for appellants.

Charles A. McKinney, for appellee.

———

FAIN, Judge.

{¶ 1} Plaintiff-appellant Brian A. Daniel appeals from a summary judgment rendered in favor of defendant-appellee Charles A. McKinney upon Daniel's legal-malpractice cause of action. Daniel contends that the trial court erred by finding, as a matter of law, that the attorney-client relationship between the parties terminated on April 4, 2006, one year and one day before the filing of Daniel's action on April 5, 2007. We agree. We find insufficient evidence in the record to support a conclusion that the attorney-client relationship between the parties terminated earlier than April 7, 2006. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

I

{¶ 2} In 2003, Daniel hired McKinney to represent him in connection with a divorce action filed by his wife, Kelly A. Daniel, as well as in connection with a civil protection order he wished to obtain against his wife. By the time relevant to this appeal, the bone of contention in the divorce action had centered upon an investment account at Edward D. Jones and Company that Daniel had owned at the time of the marriage. The issue was whether, after their marriage, Daniel had made a gift to his wife of a one-half interest in the Edward D. Jones account. The magistrate found in Kelly Daniel's favor on this issue, and awarded her a one-half interest in the account. Daniel objected.

{¶ 3} The trial court adopted the decision of the magistrate, based upon Daniel's failure to have provided the trial court with a transcript of the proceedings before the magistrate. Daniel appealed. We affirmed, holding as to the issue of the Edward D. Jones account that Daniel's failure to have provided the trial court with a transcript waived any error in that regard. *Daniel v. Daniel,* Miami County App. No. 2005CA9, 2006-Ohio-411, 2006 WL 235052.

{¶ 4} While an appeal from our judgment to the Supreme Court of Ohio was being contemplated, McKinney's office obtained from Edward D. Jones a copy of a "Full Service Agreement" that Daniel and his wife had signed that, in McKinney's opinion at least, put to rest any argument that Daniel had not made a gift to his wife of a one-half interest in the account. McKinney had calculated, and had advised Daniel, that a notice of appeal and memorandum in support of jurisdiction would have to be filed in the Supreme Court by March 14, 2006.

{¶ 5} On March 14, 2006, McKinney sent Daniel a letter that he apparently also e-mailed to Daniel. The letter is five pages long, but the material passages in the letter are as follows:

{¶ 6} "The Court of Appeals has affirmed the Final Judgment and Decree of Divorce entered on March 15, 2005 by the Miami County Common Pleas Court ('Decree'). You are also required to pay Kelly one-half of the equity in the marital residence.

{¶ 7} "You want me to continue the litigation by appealing to the Ohio Supreme Court, filing a motion to stay enforcement of the Decree, and continuing the Show Cause Hearing scheduled for March 14, 2006.

{¶ 8} "Our March 6, 2006 Motion to Continue the Show Cause Hearing has been granted. The hearing now is scheduled for April 14, 2006. This past Friday, I e-mailed a draft motion to stay pending appeal for your review. For the reasons below, I cannot continue this litigation and I did not file an appeal with the Ohio Supreme Court.

{¶ 9} " * * *

{¶ 10} "**5. Consequence if Decree Reversed**

{¶ 11} "The ultimate objective of an appeal to the Ohio Supreme Court, would be the reversal of the Decree. In that event, the case would be remanded to the lower court for further deliberations consistent with the ruling reversing the Decree. This might mean that the record would be reopened and, at that point, Kelly's counsel could more artfully request documents from [Edward D. Jones and Company ("EDJ")]. It is likely the EDJ representative who opened the Joint Account, will be deposed or called to testify. Most likely, the Full Service Agreement will be revealed.

{¶ 12} "**6. The Show Cause Hearing.**

{¶ 13} "Since you have not complied with the Decree, Kelly's attorney has filed yet another motion for you to Show Cause why you should not be held in contempt for failing to sign the EDJ documents.

{¶ 14} "The Show Cause hearing is set for April 14, 2006. If he gets wind of the Full Service Agreement, Mr. Slyman may require EDJ to produce a copy of it in connection with your hearing on his show cause motion. He would then argue that our entire case was frivolous from the start and that you [sic] refusal to comply with the Decree was in bad faith. I would expect him to ask for substantial sanctions and attorney fees. I believe Magistrate Gee would find that argument persuasive if there is any hint (e.g. testimony of EDJ representative) that you had the Full Service Agreement before trial.

{¶ 15} "**7. Appeal to Ohio Supreme Court.**

{¶ 16} "The fact that I now have the Full Service Agreement presents a dilemma. On the one hand, I am obligated to represent you zealously. That obligation appears to suggest a continuation of the litigation as long as there is an avenue for further appeal on the record which is now before the court.

{¶ 17} "On the other hand, this obligation of zealous representation is circumscribed by certain rules that govern my conduct. Specifically, the signature of an attorney on a motion or other pleading, constitutes a certificate by the attorney that to the best of his knowledge, information and belief, there is good ground to support it; and that it is not interposed for delay.

{¶ 18} "An appeal to the Supreme Court requires the attorney to specify the grounds upon which the Supreme Court should exercise jurisdiction. I am not able to certify that there is grounds [sic] to support the continuing argument about your intent. Therefore, I could not file an appeal.

{¶ 19} "I deeply regret that the evidence now available to me does not allow me to continue advocating your position. I am advising you that continued failure to comply with the Decree may result in significant sanctions. I am also

advising you that the court does have the ability to order EDJ to make the transfer to Kelly even without your signature on their documents. I recommend therefore that you immediately make plans to comply with the Decree so that at the time of the Show Cause Hearing, there will not be a justification for sanctions."

{¶ 20} McKinney also sent Daniel an e-mail on March 15, 2006, as follows:

{¶ 21} "I grappled with the decision about filing or not filing an appeal all weekend. I revised a letter I had drafted this past week explaining my reasons for not filing an appeal, and had that mailed to you yesterday and e-mailed this morning. It follows the conclusion we discussed this past Friday, that I believe the [Full Service Agreement ("FSA")] is clear and convincing evidence of your intent despite the misunderstanding between you and EDJ.

{¶ 22} "I do sense your pain in this matter but the FSA is clear. I cannot continue pursuing this line of attack we have thus far in light of the FSA. I do not believe a court will accept that you don't remember signing and receiving the FSA.

{¶ 23} "I have yet to talk with the EDJ representative who opened the account but I expect him to say that you were fully aware of what was going on and that they gave you the FSA. Anything else might subject EDJ to liability for causing a legal effect you did not authorize.

{¶ 24} "Kelly's conduct was wrong in every sense of the word. It appears you relied on her vows made before God and her promises to you that there would never be a divorce. She broke the vows and did not honor the promise. That is wrong in a moral sense. Legally, the FSA speaks in her favor.

{¶ 25} "The only thing worse than having to divide your property with an unfaithful wife, is being made to pay sanctions and attorney fees as well. If the case were remanded, I am concerned that is exactly what would happen."

{¶ 26} McKinney sent Daniel a letter on March 16, 2006, after he had discussed the joint account with a representative of Edward D. Jones that same day. After relaying that the representative recalled having explained the significance of the agreement to Daniel, thereby reinforcing McKinney's conclusion "that I cannot advocate the same position we advanced at trial and on appeal," McKinney's letter concludes as follows:

{¶ 27} "At this point, this information is being held under the attorney-client privilege. You should remember however, that the Full Service Agreement gives Kelly equal access to the Joint Account. Therefore, she is entitled to receive the same information is [sic] she or her attorney requests it. I am concerned about that because of the upcoming Show Cause Hearing and because you previously

have represented to the court that there were no other documents relating to the opening of the Joint account in your possession.

{¶ 28} "For this reason, it would be in your best interest to avoid the risk that this information would be presented at a Show Cause Hearing.

{¶ 29} "You have rejected separate offers from Kelly to settle her claim first for $50,000 and then for $36,000. It is very unlikely her attorney will recommend a settlement at this point but I can inquire into it if you want me to."

{¶ 30} McKinney sent the Miami County Clerk of Courts a letter dated April 4, 2006, in which he recited:

{¶ 31} "I have enclosed the original and four copies of the Motion for Permission to Withdraw as Counsel. Upon receipt please file accordingly and return a file-stamped copy to me in the enclosed self-addressed, stamped envelope."

{¶ 32} In his motion to withdraw, bearing a file stamp of April 5, 2006, McKinney recites:

{¶ 33} "Now comes Charles A. McKinney, counsel of record for Defendant to move this Honorable Court for permission to withdraw as counsel for Defendant pursuant to Local Rule 5.06(B). The reasons for this Motion are set forth in the following Memorandum."

{¶ 34} The entire text of McKinney's memorandum in support of his motion to withdraw is as follows:

{¶ 35} "Counsel advises that irreconcilable differences have arisen between counsel and Defendant. Despite efforts by counsel, the irreconcilable differences continue to exist as to factual, substantive, and procedural issues. Accordingly, Counsel believes that he is unable to continue his representation consistent with his duty to the client and to the Court.

{¶ 36} "Brian Daniel has been served a copy of this motion."

{¶ 37} In this action—the legal-malpractice action—the trial court has found, and neither party disputes, that on April 7, 2006, Daniel delivered to McKinney a letter of termination of legal services, and that on that same date, Daniel filed a notice of termination of services in the Miami County Common Pleas Court stating, in part:

{¶ 38} "After returning to Dayton on April 1, 2006, checking the status of his case, Plaintiff decided to terminate the Defendant from representing him in this divorce case."

{¶ 39} Daniel filed this action against McKinney for legal malpractice on April 5, 2007. McKinney moved for summary judgment, based upon his argument that

the statute of limitations began to run when the attorney-client relationship terminated, and that termination occurred, at the latest, as a result of the communications on March 14, 15, and 16, 2006.

{¶ 40} The trial court rendered summary judgment. The trial court was not convinced that the attorney-client relationship was terminated as a result of the communications from McKinney to Daniel in March 2006 but concluded that McKinney's sending of the letter and motion to withdraw, dated April 4, 2006, constituted a termination of the attorney-client relationship as of that date, with the result that the statute of limitations ran out on April 4, 2007, one day before Daniel filed this action.

{¶ 41} From the summary judgment rendered against him, Daniel appeals.

II

{¶ 42} Daniel's sole assignment of error is as follows:

{¶ 43} "The trial court erred when it granted summary judgment based on the finding that Mr. Daniel filed his legal malpractice complaint more than one year after the termination of the attorney-client relationship."

{¶ 44} The statute of limitations for legal malpractice begins to run upon the later of (1) the date that a cognizable event occurs whereby the client discovers or should have discovered that his injury was related to his attorney's act or failure to act and the client is put on notice of a need to pursue his possible remedies against the attorney, or (2) the date the attorney-client relationship for that particular transaction or undertaking terminates. *Smith v. Conley*, 109 Ohio St.3d 141, 2006-Ohio-2035, 846 N.E.2d 509.

{¶ 45} Daniel's theory of recovery against McKinney was based upon McKinney's failure to have procured the filing of a transcript to support Daniel's objections to the decision of the magistrate in his divorce action. There appears to be no dispute that Daniel was on notice of a need to pursue his possible remedies in this regard well before April 5, 2006, the critical date for statute-of-limitations purposes.

{¶ 46} The issue to which we are directed in this appeal is when the attorney-client relationship terminated. If it terminated on or after April 5, 2006, then Daniel's filing of his complaint was timely; if not, then Daniel's complaint is barred by the statute of limitations.

{¶ 47} We agree with the trial court that McKinney's communications to Daniel on March 14, 15, and 16, which are all quoted above in material part, do not show an unequivocal intent to terminate the attorney-client relationship. At most, they indicate that McKinney had concluded that the contemplated appeal to

8

the Supreme Court of Ohio was insupportable, so that he could not, consistently with the standards of professional conduct, file an appeal. But the communications also show that McKinney was continuing to represent Daniel with respect to the proceedings in the trial court, which were ongoing, despite the fact that the decree of divorce had become final. For example, McKinney, in his letter of March 16, 2006, discusses strategy for the show-cause hearing scheduled for April 14, and also undertakes to inquire concerning possible settlement, should Daniel wish him to do so. This is inconsistent with a termination of McKinney's representation with respect to the divorce.

{¶ 48} The trial court relies upon the motion to withdraw that McKinney evidently sent on April 4, 2006, but which was not filed until the next day, April 5, 2006. Daniel contends that a motion to withdraw does not constitute a termination of the attorney-client relationship unless and until it is granted, if the local rules of court require a motion. McKinney cites *Smith v. Conley*, 109 Ohio St.3d 141, 2006-Ohio-2035, 846 N.E.2d 509, for the proposition that the existence of a local rule of court requiring a motion to withdraw is immaterial to the issue of when an attorney-client relationship is terminated for purposes of the running of the legal-malpractice statute of limitations.

{¶ 49} Although the issue is close, we conclude that *Smith v. Conley* is distinguishable. In that case, nine days before counsel moved to withdraw pursuant to the local rule, counsel sent his client two letters "memorializing an August 26 [the same date as the first of the two letters] telephone conversation between the two, purporting to terminate the attorney-client relationship." Id. at ¶ 2. The Supreme Court held that a local rule of court cannot, for purposes of determining the existence of the attorney-client relationship, override the acts of the parties:

{¶ 50} "We reaffirm our statement in *Omni–Food [& Fashion, Inc. v. Smith* (1988), 38 Ohio St.3d 385, 528 N.E.2d 941] that the date of termination of the attorney-client relationship is a question of fact and is to be determined by considering the actions of the parties. * * * For purposes of R.C. 2305.11, the termination of an attorney-client relationship is not controlled by local rules of court." Id. at ¶ 9.

{¶ 51} In *Smith v. Conley*, there was a communication between the parties, independent of the subsequently filed motion to withdraw, "purporting to terminate the attorney-client relationship." In the case before us, there is no independent communication between the parties purporting to terminate the attorney-client relationship until Daniel's notice, filed April 7, 2006, which unequivocally purports to terminate the relationship.

{¶ 52} Thus, unlike in *Smith v. Conley*, in this case there is no independent communication between the parties purporting to terminate the attorney-client relationship until after the critical date for statute of limitations purposes; if McKinney is to establish the existence of a communication purporting to terminate the relationship before that date, he is forced to look to his motion to withdraw as constituting that communication.

{¶ 53} Although the issue is close, we conclude that because McKinney sought permission of the court to withdraw, in accordance with the local rule, his communication of April 4, 2007, cannot be said to have purported to terminate the attorney-client relationship. By its terms, his motion did not purport to be self-executing but looked instead to the further action of the trial court, in approving his motion, to accomplish the termination of the attorney-client relationship.

{¶ 54} Thus, we conclude that the statute of limitations did not begin to run in this case until April 7, 2006, when Daniel unconditionally and unequivocally purported to terminate the attorney-client relationship. Since this cause of action was filed on April 5, 2007, less than a year later, it is not barred by the statute of limitations.

{¶ 55} In reaching this conclusion, we are guided by the principle that:

{¶ 56} "Statutes of limitations are important and necessary limitations upon [the right to open courts under Article I, Section 16 of the Ohio Constitution]. They are necessary to provide for the eventual repose of all disputes, both actual and potential. However, since they are limitations upon the rights of the citizens of Ohio for redress, cases in which the application of a statute of limitations is doubtful should be resolved in favor of permitting the case to be decided upon its merits." *Wisecup v. Gulf Dev.* (1989), 56 Ohio App.3d 162, 165, 565 N.E.2d 865.

{¶ 57} Daniel's sole assignment of error is sustained.

### III

{¶ 58} Daniel's sole assignment of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

BROGAN and GRADY, JJ., concur.