**BUSACCA, Admr., et al., Appellants,**

v.

**MAGUIRE & SCHNEIDER, LLP, et al., Appellees.**

[Cite as *Busacca v. Maguire & Schneider, L.L.P.*,
162 Ohio App.3d 689, 2005-Ohio-4215.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2004–T–0032.

Decided Aug. 12, 2005.

690

J. Thomas Henretta, for appellants.

John T. McLandrich and Frank H. Scialdone, for appellees.

ROBERT A. NADER, Judge.

{¶ 1} In this accelerated calendar case, appellants, Sara Busacca, administrator of the estate of Frederick Hahn, and Mary Jane Hahn appeal the judgment entered by the Trumbull County Court of Common Pleas. The trial court entered summary judgment in favor of appellees, Maguire & Schneider, LLP, f.k.a. Maguire, Schneider, Zapka, & Leuchtag; Emery J. Leuchtag; and Dennis P. Zapka.

{¶ 2} Mary Jane Hahn was married to Fred Hahn. She believed a doctor had committed medical malpractice in the treatment of Fred Hahn. She hired attorneys Dennis Tackett and Emery Leuchtag from Tackett, Zapka & Leuchtag to represent her in pursuing a medical malpractice action against the doctor on behalf of her husband. While the action was pending, Fred Hahn died. Sara Busacca, Fred and Mary Jane Hahn's daughter, was appointed administrator of Fred Hahn's estate. Thereafter, the medical malpractice action was refiled, with Sara Busacca named plaintiff in her capacity as administrator of the estate.

{¶ 3} The medical malpractice action was dismissed without prejudice on September 10, 1997. It was not refiled.

{¶ 4} In 1999, appellants became concerned about the status of the case. They called Tackett and discussed the matter with him. In response, on August 9, 1999, Tackett sent a letter to Mary Jane Hahn. Therein, he informed her that the law firm of Tackett, Zapka & Leuchtag had dissolved in January 1997. He told her that Zapka and Leuchtag had possession of the medical malpractice file. In addition, he stated that the medical malpractice action had been dismissed on September 10, 1997, and according to the Ohio Rules of Civil Procedure, it could have been refiled within one year of that date. Also, he mentioned that Sara Busacca informed him that the dismissal of the case occurred without appellants' knowledge.

{¶ 5} On December 9, 1999, Sara Busacca sent a letter to Zapka and Leuchtag. The letter claimed that her phone calls to the attorneys had not been returned. In addition, the letter stated it was a demand for a status report on the medical malpractice case.

{¶ 6} On October 16, 2000, appellants sent another letter to Zapka and Leuchtag. In this letter, appellants state that the attorneys had not responded to their previous letter from December 1999. In addition, the letter states, "Since my mother, Mary Jane Hahn, has not received any status report from you, or any return calls, I am advising you that my mother and I are hiring another attorney." This letter mentions numerous phone calls and letters to the attorneys from appellants that have gone unanswered. Then, it instructs the attorneys to call Sara Busacca directly at any of three telephone numbers. The letter

concludes with the statement, "My mother, Mary Jane Hahn, and I demand that you immediately provide us with a status report regarding the above referenced cases."

{¶ 7} On February 21, 2001, appellants sent a final letter to Zapka and Leuchtag. This letter references the December 1999 and October 2000 letters and asserts that appellants received no response to them. The letter contains the same statement as the October 2000 letter: "I am advising you that my mother and I are hiring another attorney." Further, the letter demands that the attorneys return the entire file relating to the medical malpractice case. Lastly, the letter states that the information is needed "immediately and certainly prior to our March 27, 2001 meeting with our new attorney."

{¶ 8} On November 13, 2001, appellants filed the instant action for legal malpractice against appellees. Appellees filed a motion for summary judgment.

{¶ 9} The trial court issued a judgment entry, on January 24, 2003, entering summary judgment in favor of appellees. In its judgment entry, the trial court noted appellants did not file a response to the motion for summary judgment. However, a response had been filed earlier that day. Appellants appealed this judgment.

{¶ 10} On June 2, 2003, appellants, pursuant to Civ.R. 60, filed a motion with the trial court for relief from judgment. In addition, appellants filed a motion with this court requesting that the case be remanded to the trial court to rule on their Civ.R. 60 motion. On June 4, 2003, this court granted their motion.

{¶ 11} On June 6, 2003, the trial court granted appellants' Civ.R. 60 motion for a new trial. In response, appellants requested a dismissal of the pending appeal. This court then dismissed the case on June 23, 2003.

{¶ 12} The trial court issued another judgment entry on March 8, 2004. Therein, the trial court indicated that it had considered appellants' response to appellees' motion for summary judgment. The court again entered summary judgment in favor of appellees. Appellants timely appealed this judgment, resulting in the instant appeal.

{¶ 13} At oral argument, an issue arose as to whether this court had jurisdiction to hear this appeal. The parties were permitted to file supplemental briefs. After considering the supplemental briefs of the parties and upon review of the record, we see that the trial court ruled on appellants' Civ.R. 60 motion when the matter was remanded to the jurisdiction of the trial court. When the case was returned to the jurisdiction of this court, the matter was dismissed upon appellants' request. The dismissal was made without ruling on the merits of the case.

{¶ 14} The matter was back in the trial court's jurisdiction when the trial court entered summary judgment on March 8, 2004. This court has jurisdiction to hear the merits of the instant appeal resulting from the March 8, 2004 judgment entry. We will now address the merits of this case.

{¶ 15} Appellants raise the following assignment of error:

{¶ 16} "The trial court erred to the prejudice of plaintiffs-appellants by granting Defendants' motion for summary judgment."

{¶ 17} Pursuant to Civ.R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. In addition, it must appear from the evidence and stipulations that reasonable minds can come to only one conclusion, which is adverse to the nonmoving party. Civ.R. 56(C). The standard of review for the granting of a motion for summary judgment is de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

{¶ 18} In *Dresher v. Burt,* the Supreme Court of Ohio set forth a burden-shifting procedure on a summary-judgment determination. Initially, the moving party must point to evidentiary materials to show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Burt,* 75 Ohio St.3d at 293, 662 N.E.2d 264. If the moving party meets this burden, a reciprocal burden is placed on the nonmoving party to show that there is a genuine issue of fact for trial. Id.

{¶ 19} "R.C. 2305.11(A) provides that a party must bring a claim for legal malpractice within one year after the cause of action accrued." *Biddle v. Maguire & Schneider, LLP,* 11th Dist. No. 2003–T–0041, 2003-Ohio-7200, at ¶ 17. In interpreting this statute, the Supreme Court of Ohio has held:

{¶ 20} "Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." *Zimmie v. Calfee, Halter & Griswold* (1989), 43 Ohio St.3d 54, 538 N.E.2d 398, syllabus.

{¶ 21} In addition, the Supreme Court of Ohio has also held:

{¶ 22} "For the purposes of determining the accrual date of R.C. 2305.11(A) in a legal malpractice action, the trial court must explore the particular facts of the action and make the following determinations: when the injured party became aware, or should have become aware, of the extent and seriousness of his or her

alleged legal problem; whether the injured party was aware, or should have been aware, that the damage or injury alleged was related to a specific legal transaction or undertaking previously rendered him or her; and whether such damage or injury would put a reasonable person on notice of the need for further inquiry as to the cause of such damage or injury." *Omni–Food & Fashion, Inc. v. Smith* (1988), 38 Ohio St.3d 385, 528 N.E.2d 941, paragraph two of the syllabus.

{¶ 23} In the case sub judice, the trial court did not indicate in its judgment entry whether it found appellants' claims were barred by the statute of limitations because the attorney-client relationship ended or due to the existence of a cognizable event. In addition, the trial court did not indicate a specific date of accrual for purposes of R.C. 2305.11(A).

{¶ 24} We conclude that there is a genuine issue of material fact as to when the attorney-client relationship terminated. Since there is a genuine issue of material fact on this issue, summary judgment was inappropriate, and we are remanding this matter to the trial court. Whether or not a cognizable event occurred has not been raised. The issue of when the attorney-client relationship terminated is determinative of this appeal.

{¶ 25} The remainder of this analysis will focus on when the attorney-client relationship is terminated. "The issue of when the attorney-client relationship terminated is a question of fact." *Trickett v. Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A.* (Oct. 26, 2001), 11th Dist. No. 2000–P–0105, 2001 WL 1301557, at *3, citing *Omni–Food & Fashion, Inc. v. Smith* (1988), 38 Ohio St.3d 385, 388, 528 N.E.2d 941.

{¶ 26} Obviously, an attorney-client relationship can terminate based on an "affirmative act" of either the attorney or the client. Id. at *3. An example of this termination would be a formal letter specifically indicating that the representation has terminated. Id.

{¶ 27} Leuchtag, in his affidavit, states that the attorney-client relationship terminated on September 10, 1997, when he filed the dismissal in the underlying action. He states that he called Mary Jane Hahn and informed her that the case was being dismissed, and he had no intention of refiling it. He indicates that he had no further contact with appellants after September 10, 1997. However, Mary Jane Hahn, in her affidavit, expressly denies that Leuchtag informed her that the case was being dismissed and that he did not intend to refile it. Since there are competing affidavits on this point, there is a genuine issue of material fact as to whether Attorney Leuchtag called Mary Jane Hahn and terminated the relationship.

{¶ 28} Appellants claim that the February 21, 2001 letter officially ended the attorney-client relationship. Appellees counter that the October 2000 letter

ended the relationship, because it said that appellants were hiring another attorney. If the October 2000 letter terminated the relationship, appellants' legal malpractice action, filed in November 2001, would be barred by the statute of limitations.

{¶ 29} It is undisputed that, as of the February 2001 letter, the attorney-client relationship had terminated. Therein, appellants state that they are hiring another attorney, demand that the file be returned, and reference a meeting with their new attorney.

{¶ 30} We will now address whether the relationship could be determined to have concluded as of the October 2000 letter.

{¶ 31} There are two reasonable interpretations of the October 2000 letter. The first, advanced by appellees, is that appellants' statement advising them that they were hiring a new attorney was an affirmative act that terminated the attorney-client relationship. However, the statement could also be viewed as a threat: if the additional requests of the letter are not complied with, another attorney will be hired. After the statement about another attorney, appellants demand to discuss the matter and receive a status report. Thus, they were asking the attorneys to perform additional work. In addition, if the October 2000 letter and the February 2001 letter were both presented to a trier of fact, in comparing the two, a trier of fact could reasonably conclude that the additional language in the February 2001 letter requesting the return of the file and referencing the "new attorney" suggests that the October 2000 letter was merely a threat, as it did not contain these statements.

{¶ 32} There is a genuine issue of material fact regarding whether the October 2000 letter terminated the attorney-client relationship.

{¶ 33} In *Trickett*, this court held that, in certain circumstances, the attorney-client relationship may terminate on its own. *Trickett*, 11th Dist. No. 2000–P–0105, 2001 WL 1301557, at *3. Termination may occur when the underlying action has concluded or when the attorney has exhausted all remedies in the case and had declined to provide additional legal services on related issues. Id.

{¶ 34} For the following reasons, there are genuine issues of material fact as to whether the attorney-client relationship terminated "on its own." In this matter, Sara Busacca's testimony clearly indicated that she did not believe that the case had concluded. Rather, her testimony and actions, including the October 2000 letter, represent her belief that appellees were still working on the legal malpractice action. The underlying matter in the *Trickett* case was a zoning appeal that progressed to this court. The appellant had exhausted his administrative remedies, and settlement negotiations were unsuccessful. Thus, this court held that there was nothing left for the attorneys to do. Id. However,

in the case at bar, appellees voluntarily dismissed and never refiled the underlying lawsuit, apparently without notice to appellants, who believed refiling was still possible after being informed of appellees' action. Accordingly, this matter is distinguishable from this court's holding in *Trickett*.

{¶ 35} Appellees argue that appellants knew the attorney-client relationship terminated when the one-year statute of limitations expired for the underlying lawsuit. We disagree. Appellants as lay persons cannot be presumed to know the significance of a legal action being barred by a statute of limitations without being advised of the pending occurrence and its consequences by their attorney. Thus, there was a genuine issue of material fact as to when the attorney-client relationship terminated.

{¶ 36} The trial court erred in entering summary judgment in favor of appellees.

{¶ 37} Appellants' assignment of error has merit.

{¶ 38} The judgment of the trial court is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

FORD, P.J., concurs.

GRENDELL, J., concurs separately.

ROBERT A. NADER, J., retired, sitting by assignment.

DIANE V. GRENDELL, Judge, concurring.

{¶ 39} I agree with the majority that genuine issues of material fact exist as to whether Leuchtag called Mary Jane Hahn and terminated the attorney-client relationship in September 1997 and whether the October 2000 letter from appellants to Zapka and Leuchtag terminated the attorney-client relationship. I write separately to emphasize that the August 1999 letter from Tackett to appellants fails, as a matter of law, to adequately notify appellants that the attorney-client relationship had terminated.

{¶ 40} Although a client may terminate the attorney-client relationship at any time, "an attorney is not free to withdraw from the relationship absent notice to his client." *Columbus Credit Co. v. Evans* (1992), 82 Ohio App.3d 798, 804, 613 N.E.2d 671; *Mobberly v. Hendricks* (1994), 98 Ohio App.3d 839, 843, 649 N.E.2d 1247. Disciplinary Rule 2–110(A)(2) provides that "a lawyer shall not withdraw from employment until the lawyer has taken reasonable steps to avoid foreseeable prejudice to the rights of his of her client, including giving due notice to his

or her client, allowing time for employment of other counsel, [and] delivering to the client all papers and property to which the client is entitled." See, also, Ethical Consideration 2–31 ("a lawyer should protect the welfare of his client by giving due notice of his withdrawal").

{¶ 41} While there may be a few limited circumstances in which the attorney-client relationship may terminate on its own, see, e.g. *Trickett v. Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A.*, (Oct. 26, 2001), 11th Dist. No. 2000–P–0105, 2001 WL 1301557, this case is *not* one of them.

{¶ 42} The August 1999 letter from Tackett to Mary Jane Hahn informed Hahn that the law partnership of Tackett, Zapka & Leuchtag had dissolved in January 1997; that Zapka and Leuchtag had taken possession of the medical malpractice case file; that Zapka and Leuchtag had filed a voluntary dismissal without prejudice of the lawsuit on September 10, 1997; and that "[a]ccording to the Ohio Rules of Civil Procedure, your lawsuit could have been re-filed against Dr. Sudheendra, within one (1) year after the original Dismissal was filed."

{¶ 43} Tackett's cryptic statement that "the lawsuit could have been refiled within one (1) year after the original Dismissal" is not adequate, as a matter of law, to inform laypersons that their lawsuit has been permanently barred by the running of the statute of limitations. Attorney Tackett's letter does not mention or explain the statute of limitations and does not suggest at all whether the case had been refiled or the implications of failing to refile the suit within one year of the voluntary, original dismissal. While an attorney could be expected to grasp the significance of Tackett's words, appellants could not be expected to do so.

{¶ 44} Furthermore, an attorney cannot benefit from his benign neglect or active avoidance of a client. By not responding to appellants' telephone calls and correspondence, appellees continued to foster the impression, if not the fact, that appellees had a professional relationship with appellants. Appellees could have and should have notified appellants that they had dismissed the lawsuit and no longer represented appellants with regards to that matter. An attorney cannot string a client along for a year after committing malpractice to avoid being held liable for such professional misconduct by the passing of the statute of limitations.

{¶ 45} As this court has stated previously, "By actively concealing the existence of their misconduct through deception and avoidance, an attorney cannot toll the running of the statute of limitations. To hold differently would 'potentially encourage[ ] an unscrupulous attorney to conceal his or her malpractice until that time when the statute of limitations has run its course.'" *Biddle v. Maguire & Schneider, LLP*, 11th Dist. No. 2003–T–0041, 2003-Ohio-7200, at ¶ 26, quoting *Omni–Food & Fashion, Inc. v. Smith* (1988), 38 Ohio St.3d 385, 387, 528 N.E.2d 941.