**McGLOTHIN, Appellant,**

v.

**SCHAD, Appellee.**

[Cite as *McGlothin v. Schad,* 194 Ohio App.3d 669, 2011-Ohio-3011.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA2010–12–128.

Decided June 20, 2011.

</div>

Cameron McGlothin, pro se.

Kevin M. Schad, pro se.

PIPER, Judge.

{¶ 1} Plaintiff-appellant, Cameron McGlothin, appeals a decision of the Warren County Court of Common Pleas granting the motion of defendant-appellee, Kevin Schad, for a judgment on the pleadings, thus barring appellant's claim for legal-malpractice damages.

{¶ 2} On February 13, 2006, appellant was sentenced to 28 years to life in prison for murder, aggravated robbery, robbery, and a gun specification. Appellee represented appellant on appeal. On September 14, 2007, the First District Court of Appeals affirmed conviction on the appeal, which resulted in an appeal to the Supreme Court of Ohio. The Supreme Court of Ohio declined to accept the appeal on January 23, 2008.

{¶ 3} Approximately one year and three months later, on April 1, 2009, appellant filed an application for reopening pursuant to App.R. 26(B), alleging ineffective assistance of counsel. On October 8, 2009, the First District Court of Appeals granted appellant's application for reopening his appeal and found counsel ineffective because no assignment of error had been submitted to challenge the trial court's sentence imposing separate prison terms for the allied offenses of aggravated robbery and robbery. The case was remanded for resentencing. Resentencing did not benefit appellant, as his time for robbery ran concurrently with his time for the other crimes in his original sentence. Appellant was again sentenced to 28 years to life in prison.

{¶ 4} On August 18, 2010, more than one year and four months *after* appellant filed his application for reopening his appeal, appellant filed a legal-malpractice claim against appellee in the Warren County Court of Common Pleas. Appellant alleged that as a proximate result of appellee's malpractice, appellant had suffered "extended hardships of prison" that could have been avoided had appellee performed competently. Appellant also demanded compensatory dam-

ages in excess of $7,000, the amount that appellant had paid appellee for competent representation, plus prejudgment and postjudgment interest, and damages for pain and suffering in excess of $10,000.

{¶ 5} Appellee moved for judgment on the pleadings, alleging that appellant's claims were barred by the statute of limitations under R.C. 2305.11 and that appellant failed to prove/plead damages.

{¶ 6} Appellant filed a memorandum opposing the motion for judgment on the pleadings. He argued that the attorney-client relationship had never been terminated, that the statute of limitations had not run, and that he did not need to plead a legal theory of recovery or a particular theory of a claim. Appellant also argued that he was damaged at least by the amount of $7,000 paid to appellee for incompetent services.

{¶ 7} The trial court granted appellee's motion for judgment on the pleadings. In its decision and entry, the trial court found that the statute of limitations had run because a cognizable event occurred at the latest on March 31, 2009, when appellant discovered or should have discovered his injury once he filed an application for reopening his First District appeal for ineffective assistance of counsel. Because the statute of limitations had run, the trial court did not address appellee's allegation that appellant failed to prove/plead damages.

{¶ 8} Appellant appeals the trial court's decision granting appellee's motion for judgment on the pleadings and raises one assignment of error:

{¶ 9} "The trial court erred and abused its discretion when it granted appellee's motion for judgment on the pleadings when there were facts in dispute which could only be decided by a jury, according to law."

{¶ 10} An appellate court reviews the trial court's decision on a Civ.R. 12(C) motion de novo and considers all legal issues without deference to the trial court's decision. *Union Twp., Clermont Cty. v. Union Twp. Professional Firefighters' Local 3412* (2001), 142 Ohio App.3d 542, 547, 756 N.E.2d 204. Civ.R. 12(C) motions are for resolving questions of law, and the determination made on the pleading is based solely on the allegations in the pleadings. *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 165–166, 63 O.O.2d 262, 297 N.E.2d 113. Unlike motions under Civ.R. 12(B)(6), motions under Civ.R. 12(C) allow all pleadings to be considered. *Keegan v. Sneed* (Oct. 16, 2000), Butler App. No. CA2000–02–029, 2000 WL 1530879, 5–6. Any writings attached to the pleadings may also be considered. *Golden v. Milford Exempted Village School Bd. of Edn.*, Clermont App. No. CA2008–10–097, 2009-Ohio-3418, 2009 WL 2005368, ¶ 6. "Under Civ.R. 12(C), dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt,

that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief." *State ex rel. Midwest Pride IV, Inc. v. Pontious* (1996), 75 Ohio St.3d 565, 570, 664 N.E.2d 931. A Civ.R. 12(C) motion "requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law." Id. Accordingly, we must address appellant's assignment of error construing the pleadings in favor of appellant without regard to the conclusion of the trial court.

{¶ 11} To determine whether appellee is entitled to judgment as a matter of law, we address the applicable law regarding the statute of limitations in legal-malpractice cases. "[A]n action for malpractice * * * shall be commenced within one year after the cause of action accrued * * *." R.C. 2305.11(A). "[A]n action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." *Zimmie v. Calfee, Halter & Griswold* (1989), 43 Ohio St.3d 54, 58, 538 N.E.2d 398.

{¶ 12} Because the Supreme Court of Ohio has outlined a two-part test to determine the accrual date for the statute of limitations for malpractice, we will first consider whether or not a cognizable event occurred. A cognizable event occurs when the person discovers or should have discovered that he or she was injured by the attorney's actions or nonactions. Id. at 58. The person need not be aware of the full extent of injury. Id. However, a cognizable event should alert a reasonable person that there was a questionable legal practice. Id. Once a cognizable event occurs, there is notice of " 'the necessity for investigation and pursuit of her remedies.' " *Lintner v. Nuckols*, Preble App. No. CA2003–10–020, 2004-Ohio-3348, 2004 WL 1433632, ¶ 19, quoting *Allenius v. Thomas* (1989), 42 Ohio St.3d 131, 134, 538 N.E.2d 93. The notice may be actual or constructive. *Flowers v. Walker* (1992), 63 Ohio St.3d 546, 549, 589 N.E.2d 1284.

{¶ 13} Here, appellant filed an application for reopening of his criminal case in the First District Court of Appeals on April 1, 2009, alleging ineffective assistance of counsel. At this point, appellant should have been aware that a questionable legal practice had occurred. Appellant alleged ineffective assistance of counsel because no assignment of error had been submitted to challenge the trial court's sentence imposing separate prison terms for the allied offenses of aggravated robbery and robbery. Appellant's current malpractice claim is based on this ineffective assistance of counsel. Appellant at least knew of a questiona-

ble legal practice when he formulated the thought to file his application for reopening. Thus, the cognizable event occurred at the latest on March 31, 2009, the day before appellant filed his lengthy application for reopening.

{¶ 14} We now address the second part of the test articulated in *Zimmie*: whether the attorney-client relationship terminated. The attorney and client both benefit by the tolling of the statute of limitations during the attorney-client relationship, " 'because the client has more time in which to bring his or her claim and the lawyer has an opportunity to correct an error.' " *Brown v. Nichols* (Mar. 9, 1987), Madison App. No. CA86–10–022, 1987 WL 7594, at 5, quoting *Vail v. Townsend* (1985), 29 Ohio App.3d 261, 263, 29 OBR 324, 504 N.E.2d 1183. Whether or not an attorney-client relationship has been terminated is a question of fact. *Omni–Food & Fashion, Inc. v. Smith* (1988), 38 Ohio St.3d 385, 388, 528 N.E.2d 941; *Smith v. Conley*, 109 Ohio St.3d 141, 2006-Ohio-2035, 846 N.E.2d 509, ¶ 12. "The date of termination of an attorney-client relationship for R.C. 2305.11 purposes is a fact-specific determination to be made according to the rules set forth by statute and by case law." Id. at ¶ 12. The termination of the attorney-client relationship is determined by the actions of the parties. Id. Either party's affirmative act may terminate the relationship. Id. Where reasonable minds can come but to one conclusion from the evidence to determine when the attorney-client relationship ends, the termination may be decided as a matter of law. *Trombley v. Calamunci, Joelson, Manore, Farah & Silvers, L.L.P.*, Lucas App. No. L–04–1138, 2005-Ohio-2105, 2005 WL 1009841, ¶ 43.

{¶ 15} Some courts have held that an affirmative act is required to terminate the attorney-client relationship. E.g., *Mobberly v. Hendricks* (1994), 98 Ohio App.3d 839, 843, 649 N.E.2d 1247 ("In determining when the attorney-client relationship is terminated, the court must point to an affirmative act by either the attorney or the client that signals the end of the relationship"). See also *Steindler v. Meyers, Lamanna & Roman*, Cuyahoga App. No. 86852, 2006-Ohio-4097, 2006 WL 2297204, ¶ 11. Affirmative acts sufficient to terminate the attorney-client relationship include the client retaining other counsel. *Zimmie*, 43 Ohio St.3d 54, 538 N.E.2d 398, at paragraph six of the syllabus. See also *Wilkerson v. O'Shea*, Butler App. No. CA2009–03–068, 2009-Ohio-6550, 2009 WL 4810187, ¶ 2, 18. Other courts have held that an attorney-client relationship may also be terminated either when the underlying action has concluded or when the attorney has exhausted all remedies in the case. E.g., *Busacca v. Maguire & Schneider, L.L. P.*, 162 Ohio App.3d 689, 2005-Ohio-4215, 834 N.E.2d 856, ¶ 33. No affirmative act is needed when there is a lack of subsequent legal remedies in a particular transaction and there is no communication between the parties regarding any related legal matter. *Trickett v. Krugliak, Wilkins, Griffiths &*

*Dougherty Co., L.P.A.* (Oct. 26, 2001), Portage App. No. 2000–P–0105, 2001 WL 1301557, at *3.

{¶ 16} In this case, it is undisputed from the pleadings that appellee performed legal work for appellant regarding appellant's criminal appeal, which resulted in affirmance by the First District Court of Appeals on September 14, 2007. It is also undisputed that appellant filed an application for reopening his appeal on April 1, 2009, without the aid of appellee. In effect, by filing his application for reopening his appeal pro se, appellant took the place of his attorney. Appellant severed the attorney-client relationship when he declined to use appellee's services for a matter stemming from the initial criminal appeal that previously created the attorney-client relationship. Under this standard, the attorney-client relationship terminated on April 1, 2009.

{¶ 17} An appeal of appellant's First District case was not accepted for review on January 23, 2008. *State v. McGlothin,* Hamilton App. No. C–060145, 2007-Ohio-4707, 2007 WL 2683518, appeal not accepted for review, 116 Ohio St.3d 1480, 2008-Ohio-153, 879 N.E.2d 786. There is no indication from the pleadings that there was communication between appellant and appellee for appellee to perform work outside the scope of appellant's criminal appeal. Under this standard, the attorney-client relationship may have terminated without an affirmative act by either party when appellee exhausted remedies on behalf of appellant.

{¶ 18} No matter how we view the facts, the attorney-client relationship definitely terminated with appellant's affirmative act of filing his application for reopening his appeal without appellee's assistance. As a matter of law, reasonable minds can come to but one conclusion that the attorney-client relationship terminated on April 1, 2009, at the latest.

{¶ 19} Considering the later date of the termination of the attorney-client relationship of April 1, 2009, and the date of the cognizable event of March 31, 2009, more than one year had passed before appellant filed the malpractice action on August 18, 2010. Therefore, the statute of limitations had run. Construing all allegations in the pleadings in favor of appellant, there is no set of facts that would entitle him to relief. Appellant is barred from bringing his malpractice claim, and appellee is entitled to judgment on the pleadings.

{¶ 20} Appellant's assignment of error is overruled, and the judgment is affirmed.

Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.