[Cite as *Ruf v. Belfance*, 2013-Ohio-160.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

TERRI L. RUF

     Appellant

     v.

KATHRYN A. BELFANCE, et al.

     Appellees

C.A. No.     26297

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    2009 09 6525

DECISION AND JOURNAL ENTRY

Dated: January 23, 2013

---

KEOUGH, Judge.

{¶1} Plaintiff-appellant, Terri L. Ruf, appeals the summary judgment of the Summit County Court of Common Pleas in favor of defendants-appellees Katherine A. Belfance, Melissa Carey Dean, Katherine A. Belfance & Associates, L.L.C., and Roderick Linton & Belfance, L.L.P. (collectively "Belfance"), on Ruf's legal malpractice claim against appellees. At issue is whether Ruf's malpractice claim was time-barred. For the reasons that follow, we affirm.

I. Facts and Procedural Background

{¶2} On April 21, 2005, Ruf retained Belfance to represent her in divorce proceedings. The divorce decree was announced and journalized on June 28, 2007. Belfance subsequently filed an appeal on Ruf's behalf, but the appellate court declined to address the merits of the appeal in large part because exhibits from the divorce trial had not been timely filed with the court of appeals. Ruf pursued a discretionary appeal to the Supreme Court of Ohio, which declined jurisdiction on July 9, 2008.

{¶3} On August 12, 2008, unbeknownst to Belfance, Ruf consulted by phone with Richard A. Rabb, a domestic relations attorney. Ruf conceded at her deposition that she had lost confidence in Belfance and called Rabb with the intent to have him take her place. On August 18, 2008, Ruf met with Rabb and discussed her dissatisfactions with Belfance and the divorce case, and requested that Rabb represent her in the divorce case. That same day, Rabb spoke with attorney Richard Koblentz about Ruf's divorce case. Ruf had already engaged Koblentz to pursue a legal malpractice claim against Belfance, and he had referred her to Rabb.

{¶4} Rabb agreed to become Ruf's counsel and on August 19, 2008, sent her a confirming retention letter, which Ruf signed and returned. Although the record does not reflect the date of payment, pursuant to the retention letter, Ruf paid Rabb a retainer of $8,000. Two days later, on August 21, 2008, Ruf conferred again with Rabb regarding both the divorce case and a potential malpractice case against Belfance.

{¶5} Ruf did not notify Belfance that she had retained new counsel nor did Rabb give notice that he was Ruf's new counsel. On September 11, 2008, Ruf and Carl Patrick, her boyfriend and an attorney licensed in Florida, met with Belfance to discuss filing an affidavit of prejudice against the domestic relations judge with the Chief Justice of the Supreme Court of Ohio. Ruf did not inform Belfance at the meeting that she had retained new counsel and, to the contrary, affirmatively misrepresented to Belfance that she had *not* retained other counsel. When Belfance advised Ruf during the meeting that she would not sign an affidavit of prejudice, Ruf became unhappy and questioned Belfance's motives. Ruf's attitude caused Belfance to conclude that Ruf should obtain new counsel and she so advised Ruf in a letter dated September 12, 2008. The trial court approved Belfance's withdrawal on September 22, 2008.

{¶6} On September 2, 2009, Ruf filed her complaint for legal malpractice against Belfance. The parties engaged in discovery and retained experts regarding the standard of care. On November 18, 2011, Belfance filed a motion for summary judgment in which she argued that no genuine issue of material fact existed with respect to the merits of Ruf's malpractice claims and that Ruf had failed to file her complaint within the one-year limitations period set forth in R.C. 2305.11(A).

{¶7} The trial court subsequently granted Belfance's motion for summary judgment on statute of limitations grounds alone. The court held that a cognizable event sufficient to put Ruf on notice of a questionable legal practice had occurred on or before August 18, 2008, and, further, that Ruf had effectively terminated the attorney-client relationship on or before August 18, 2008. Accordingly, the court held that Ruf's legal malpractice action was time-barred because the applicable one-year statute of limitations expired on August 18, 2009, and Ruf did not file her action until September 2, 2009.

## II. Analysis

{¶8} Civ.R. 56(C) provides that summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can only reach a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201 (1998); *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). We review the trial court's judgment de novo, using the same standard that the trial court applies under Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671

N.E.2d 241 (1996). Accordingly, we stand in the shoes of the trial court and conduct an independent review of the record.

{¶9} In her single assignment of error, Ruf contends that the trial court erred in granting summary judgment to Belfance.

{¶10} Under R.C. 2305.11(A), an action for legal malpractice must be filed within one year of the time the cause of action accrues.

> [A]n action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.

*Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398 (1989), syllabus, citing *Omni-Food & Fashion, Inc. v. Smith*, 38 Ohio St.3d 385, 528 N.E.2d 941 (1988). "*Zimmie* and *Omni-Food* require two factual determinations: (1) When should the client have known that he or she may have an injury caused by his or her attorney? and (2) When did the attorney-client relationship terminate? The latter of these two dates is the date that starts the running of the statute of limitations." *Smith v. Conley*, 109 Ohio St.3d 141, 2006-Ohio-2035, 846 N.E.2d 509, ¶ 4.

{¶11} Ruf does not dispute that the cognizable event for her malpractice claim occurred more than one year before the September 2, 2009 filing of her malpractice complaint against Belfance. Rather, she contends that the attorney-client relationship ended no earlier than her September 11, 2008 meeting with Belfance and no later than Belfance's September 12, 2008

termination letter and, hence, that she brought her claim within the one-year statute-of-limitations period. At the very least, she contends there is a genuine issue of material fact as to when the attorney-client relationship terminated.

{¶12} Generally, the determination of whether an attorney-client relationship has ended is a factual question to be resolved by the trier of fact. *Omni-Food & Fashion*, 38 Ohio St.3d at 388. But one party to the relationship may take affirmative actions that are so inconsistent with a continued relationship that the question of when the attorney-client relationship ended may be decided as a matter of law. *Accelerated Sys. Integration, Inc. v. Ritzler, Coughlin & Swansinger, Ltd.*, 8th Dist. No. 97481, 2012-Ohio-3804, ¶ 43, citing *Steindler v. Meyers, Lamanna & Roman*, 8th Dist. No. 86852, 2006-Ohio-4097, ¶ 11; *Downey v. Corrigan*, 9th Dist. No. 21785, 2004-Ohio-2510, ¶ 14. Where the actions terminating the relationship are clear and unambiguous, such that reasonable minds can come to but one conclusion from the evidence, the termination may be decided as a matter of law. *Koeber v. Levy & Gruhin*, 9th Dist. No. 21730, 2004-Ohio-3085, ¶ 19; *Accelerated Sys. Integration, Inc.* at ¶ 43. Here, construing the evidence in favor of Ruf, as required by Civ.R. 56(C), we find Ruf's actions so inconsistent with a continued attorney-client relationship that the issue may be decided as a matter of law.

{¶13} "The termination of the attorney-client relationship depends, not on a subjective loss of confidence on the part of the client, but on *conduct*, an affirmative act by either the attorney or the client that signals the end of the relationship." *Mastran v. Marks*, 9th Dist. No. 14270, 1990 Ohio App. LEXIS 1219 (Mar. 28, 1990) (emphasis sic); *see also McGlothin v. Schad*, 194 Ohio App.3d 669, 2011-Ohio-3011, 957 N.E.2d 810, ¶ 14 ("The termination of the attorney-client relationship is determined by the actions of the parties."), citing *Smith v. Conley,* 109 Ohio St.3d 141, 2006-Ohio-2035, 846 N.E.2d 509, ¶ 12.

**{¶14}** Here, Ruf's conduct unequivocally signalled the end of the attorney-client relationship no later than August 18, 2008, when she retained new counsel for her divorce. She admitted in her deposition that she sought out Rabb because she was dissatisfied with Belfance's representation and had lost confidence in her. She consulted with Rabb on August 12, retained him on August 18, and then memorialized the new retention by signing Rabb's letter of August 19 and paying a retainer of $8,000. But perhaps most significantly, even before consulting with Rabb, she had already retained Koblentz to pursue malpractice claims against Belfance. In light of Ruf's actions, all of which were patently inconsistent with a continued attorney-client relationship, reasonable minds could only conclude that the attorney-client relationship terminated no later than August 18, 2008.

**{¶15}** Ruf contends, however, that her consultation with and retention of Rabb did not clearly and unambiguously terminate her attorney-client relationship with Belfance because even after August 18, Belfance filed several motions on her behalf in the domestic relations court and sent correspondence to opposing counsel. She further contends that any lack of trust and confidence sufficient to terminate the attorney-client relationship must be "experienced mutually" between the attorney and client before the relationship is terminated for purposes of a statute-of- limitations analysis. Accordingly, she contends that the attorney-client relationship did not terminate until September 12, when Belfance sent the termination letter that made both parties aware the relationship was terminated. She also argues that the limitations period should have been tolled from the date she retained Rabb until Belfance sent her termination letter. Ruf's arguments are without merit.

**{¶16}** First, any argument that the attorney-client relationship extended into September is based on Ruf's concealment that new counsel had been engaged (presumably so that Belfance

instead of Rabb would file the affidavit of prejudice). But Ruf's strategic concealment and misrepresentation cannot extend the attorney-client relationship for statute-of -limitations purposes where her actions to terminate that relationship were clear and unequivocal. Any finding to the contrary would reward Ruf for her deception.

{¶17} Furthermore, the case law is clear that because an attorney-client relationship is consensual in nature, the actions of *either* party to the relationship can affect its continuance. "Either party's affirmative act may terminate the relationship." *McGlothin*, 194 Ohio App.3d 669, 2011-Ohio-3011, 957 N.E.2d 810, at ¶ 14, citing *Smith*, 109 Ohio St.3d 141, 2006-Ohio-2035, 846 N.E.2d 509, at ¶ 12. *See also Mastran v. Marks*, 9th Dist. No. 14270, 1990 Ohio App. LEXIS 1219 (Mar. 28, 1990) ("[T]he termination of the relationship * * * depends * * * on * * * an affirmative act by *either* the attorney or the client that signals the end of the relationship.") (Emphasis added). Here, Ruf's actions unequivocally terminated the attorney-client relationship no later than August 18, 2008; the fact that Belfance did not know that Ruf had terminated the relationship and continued to do work for her is not dispositive.

{¶18} Our conclusion is consistent with the Sixth District's reasoning in *Woodrow v. Heintschel*, 194 Ohio App.3d 391, 2011-Ohio-1840, 956 N.E.2d 855 (6th Dist.) In that case, the clients filed suit for legal malpractice, claiming that their lawyer's withdrawal without their knowledge had caused a default judgment against them and other derivative damages. The trial court ruled that the clients' action was time-barred and granted granted summary judgment to the lawyer. On appeal, the clients argued that for the attorney-client relationship to terminate, the client as well as the lawyer "must know" it has ended. *Id.* at ¶ 42. The appellate court rejected this argument, finding that the test for termination is "affirmative conduct by *either* party" and to find that one party's subjective knowledge of termination is determinative would be "unworkable

as a practical matter and contrary to *Zimmie* and the import of *Smith v. Conley, supra.*" *Id.* at ¶ 45. Thus, Ruf's argument that termination must be "experienced mutually" is without merit.

{¶19} Furthermore, in light of Ruf's actions, Belfance's letter was not necessary to terminate the attorney-client relationship. Because conduct that "dissolves the essential mutual confidence between attorney and client" signifies the termination of the attorney-client relationship, an explicit statement terminating the relationship is not necessary. *Brown v. Johnstone*, 5 Ohio App.3d 165, 166-167, 450 N.E.2d 693. Hence, as in this case, where a client, unbeknownst to her attorney, retains new counsel to represent her in the case in which current counsel is providing representation, and then purposely conceals and mispresents that retention, a termination letter or other formal communication between attorney and client is not required in order to find that the relationship has terminated.

{¶20} Last, we find without merit Ruf's argument that because Belfance continued to work on post-decree matters even after she retained Rabb, the statute of limitations should have been tolled until Belfance sent the termination letter. The statute is tolled so long as the attorney and client continue to have an attorney-client relationship. *Fisk v. Rauser & Assoc. Legal Clinic Co, LLC*, 10th Dist. No. 10AP-427, 2011-Ohio-5465, ¶ 23, citing *Vail v. Townsend*, 29 Ohio App.3d 261, 504 N.E.2d 1183 (10th Dist. 1985). Because Ruf terminated the attorney-client relationship, the statute was not tolled, even though Belfance continued to work for Ruf. Moreover, tolling in a legal malpractice context is germane where a cognizable event has occurred and the attorney-client relationship continues so that the attorney has an opportunity to correct the error and perhaps avoid a legal malpractice claim. *See Vail, supra.* Tolling is not relevant here because the attorney-client relationship unequivocally terminated no later than August 18, 2008, when Ruf retained new counsel.

{¶21} On this record, we agree with the trial court that the attorney-client relationship between Ruf and Belfance terminated as a matter of law no later than August 18, 2008, when Ruf retained Rabb to represent her in the divorce case. Because the one-year statute of limitations began to run on that date, the complaint at issue, filed on September 2, 2009, was not timely. Accordingly, Ruf's claim is barred by the statute of limitations; the trial court therefore properly granted summary judgment to Belfance.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

KATHLEEN ANN KEOUGH
FOR THE COURT

BLACKMON, P. J.
CONCURS.


JONES, J.
DISSENTING.

**{¶22}** I dissent. I would find that the trial court erred in granting summary judgment because genuine issues of material fact remain as to whether the statute of limitations had expired at the time Ruf filed her legal malpractice action.

**{¶23}** Ruf's decision to retain new counsel because she was dissatisfied with Belfance's representation did not unequivocally terminate the attorney-client relationship. Reasonable minds could come to more than one conclusion as to whether it was the retention of other counsel in August 2008 or the September 2008 termination letter that ended the relationship.

**{¶24}** In *N. Shore Auto Sales v. Weston*, 8th Dist. No. 86332, 2006-Ohio-456, this court found that a notice of substitution of counsel filed with the Ohio Supreme Court and not the earlier retention of other counsel marked the beginning of the statute of limitations period. While the facts of *N. Shore* are admittingly different, the case illustrates that there is no hard and fast rule that retention of new counsel terminates an attorney-client relationship, nor should this court create one.

**{¶25}** In a recent decision by the Seventh District Court of Appeals, the court found that a letter by a client to her attorney informing him that she *intended* to terminate him as her attorney did not mark the termination of the attorney-client relationship. *McOwen v. Zena*, 7th Dist. No. 11MA58, 2012-Ohio-4568. Instead, it was a subsequent letter sent from the client to the attorney in which the client unambiguously informed the attorney of her decision to terminate him that marked the end of the relationship. The court relied on the fact that the attorney performed work for the client after the client sent the first letter outlining her intent to terminate

him. Thus, the later letter marked the beginning of the statute of limitations period. *Id.* at ¶ 22. Likewise, in this case, Ruf may have intended to terminate her relationship with Belfance when she retained new counsel, but in viewing the facts in a light most favorable to Ruf, I would not find that Ruf's actions were a clear and unambiguous termination of her relationship with Belfance.

{¶26} Thus, reasonable minds could disagree as to which event terminated the attorney-client relationship. Because of this, the trial court's granting of summary judgment was in error.

(Keough, J., Blackmon, P.J., and Jones, J., Judges of the Eighth District Court of Appeals, sitting by assignment.)

APPEARANCES:

RICHARD S. KOBLENTZ, BRYAN L. PENVOSE and KEVIN R. MARCHAZA, Attorneys at Law, for Appellant.

ALAN M. PETROV, THERESA A. RICHTHAMMER and JAMIE A. PRICE, Attorneys at Law, for Appellee.