[Cite as *Accelerated Sys. Integration Inc. v. Ritzler, Coughlin & Swansiger, Ltd.*, 2012-Ohio-3803.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 97481

# ACCELERATED SYSTEMS INTEGRATION, INC., ET AL.

**PLAINTIFFS-APPELLANTS**

vs.

# RITZLER, COUGHLIN & SWANSINGER, LTD., ET AL.

**DEFENDANTS-APPELLEES**

## JUDGMENT:
## REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-722726

**BEFORE:** Boyle, P.J., S. Gallagher, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** August 23, 2012

**ATTORNEY FOR APPELLANTS**

Dale F. Pelsozy
P.O. Box 391411
Solon, Ohio    44139


**ATTORNEYS FOR APPELLEES**

Alan M. Petrov
Holly Olarczuk-Smith
Theresa A. Richthammer
Gallagher Sharp
6th Floor Bulkley Building
1501 Euclid Avenue
Cleveland, Ohio    44115

MARY J. BOYLE, P.J.:

{¶1} Plaintiffs-appellants, Accelerated Systems Integration, Inc. ("ASI"), Michael T. Joseph, and Michael T. Joseph as trustee of the Michael T. Joseph ESBT ("the trust") (collectively "the appellants"), appeal the trial court's decision granting summary judgment in favor of defendants-appellees, Ritzler, Coughlin & Swansinger, Ltd. and Joseph Ritzler (collectively "Ritzler") on the underlying legal malpractice action. Finding merit to the appeal, we reverse and remand.

## Procedural History and Facts

{¶2} The underlying facts relevant to the disposition of the assignments of error span back over 12 years. For the sake of clarity and brevity, we set forth the following background information and will discuss the facts in more detail as necessary in our discussion of the assignments of error.

{¶3} Michael Joseph was formerly partners with Michael and Dianne Kennedy ("the Kennedys"). Together, they operated and jointly owned MRK Technologies ("MRK"), a business that provided technical support and consulting in the area of computers and software. In the fall of 1999, Joseph and the Kennedys decided to part ways. Joseph agreed to sell his interest in MRK while acquiring certain assets from MRK and forming his own business — ASI, and the Kennedys agreed to buy Joseph's shares, choosing to own and run MRK without Joseph.

**{¶4}**   On October 12, 1999, the parties — ASI, Joseph, the trust, the Kennedys, and MRK — executed a lengthy and detailed written agreement governing the terms of the separation ("the Separation Agreement").    The execution of the Separation Agreement (and specifically paragraph 5 — "the bonus provision") is the genesis of long, protracted litigation among these parties.

**{¶5}**  Paragraph 5 of the Separation Agreement, titled "Bonus Rights, Accounting Procedures and Adjustments and Related Financial Matters," specifically recognizes that the partners have shared bonus distributions from MRK on an equal 50-50 basis after a return on equity calculation and that the partners agree that they "shall continue to share and receive bonus distributions on that basis through and including December 31, 1999."    The section further recognizes that certain "procedures, adjustments, and agreements" shall be observed "in order to properly account for and calculate the bonus entitlements of MJ and MK/DK through December 31, 1999."   *Id.* These procedures are identified as follows:

(i) Promptly following the Second Closing, the Company's independent accountants, Hausser & Taylor, shall perform an audit and examination of the Company's financial statements for the year ended December 31, 1999, and as promptly subsequent to December 31, 1999, as feasible, and in any event within a period of sixty (60) days, deliver to the parties hereto its audit report and calculation of bonus entitlements of MJ and MK/DK, respectively.   In calculating bonus entitlements, the accountants shall allocate for bonus purposes only any excess above $1,823,342 of equity of the Company.   Should equity of the Company be determined to equal less than $1,823,342, MJ and MK/DK shall be obligated to return to the Company fifty percent (50%) of the deficiency.   The Company agrees to cause Hausser & Taylor to consult with MJ regarding the appropriate levels of reserves prior to the completion of this report.

**{¶6}** Paragraph 5(a)(ii) further contains a mechanism to resolve any dispute in the event that either MJ or MK/DK did not agree with Hausser & Taylor's ("H&T") audit report and corresponding bonus calculation:

> Upon receipt of this audit report and calculation each of MJ and MK/DK, at his (or their) own expense, may engage certified public accountants to review and examine the financial records of the Company, the work papers of Hausser & Taylor and other matters necessary to analyze and evaluate such report and calculation. If within a period of thirty (30) days following delivery of the Hausser & Taylor report and calculation, either MJ and/or MK/DK gives notice (as provided herein) of objection to such report and/or calculation and their accompanying financial statements as not fairly presenting in all material respects the results of operations and financial condition of the Company as at and for the twelve (12) months ended December 31, 1999 in accordance with generally accepted accounting principles consistently applied, any such objection or objections shall be resolved by consultation of Hausser & Taylor with the accounting representatives designated by MJ and/or MK/DK respectively. The parties and their respective accountants agree to negotiate in good faith any remaining differences and, if unable to resolve such differences to their mutual satisfaction, shall engage an independent accounting firm to review and resolve any such differences. MK and MK/DK shall share the costs of such final accounting equally. * * *

**{¶7}** As stated in the Separation Agreement, the parties agreed that the accounting firm of H&T would conduct the 1999 year-end audit for purposes of determining Joseph's and the Kennedys' bonus.

**{¶8}** H&T finished the final year-end audit and bonus calculation in February 2000. According to Joseph, he expected to be paid out approximately $5 million to $6 million as part of his bonus calculation under the Settlement Agreement. But rather than being paid out the millions that he was anticipating, Joseph was notified that the advances made in the previous fall exceeded MRK's final profit for 1999, thereby resulting in Joseph and the Kennedys each having been overpaid by $1.2 million.

{¶9} Joseph believed that the Kennedys and MRK failed to adhere to the accounting and oversight procedures contained in the Settlement Agreement and that their alleged disregard for these procedures precluded an accurate accounting of his bonus. He additionally believed that H&T neglected its duties by not uncovering and rectifying MRK's alleged accounting misconduct as contemplated in the Settlement Agreement. According to Joseph, H&T, MRK, and the Kennedys conspired to deprive him of his bonus.

{¶10} Following H&T's final determination of the bonus calculation, the relationship between Joseph and the Kennedys completely broke down, resulting in several legal disputes in various forums. The appellants, however, did not retain Ritzler to represent them in any matter related to the bonus calculation until September 2001.

{¶11} Relevant to this appeal, the allegations of malpractice stem from Ritzler's representation of the appellants in an action that originated as a defamation suit filed by H&T against ASI but ultimately became the case that resolved the bonus calculation dispute — the case that the appellants attribute to as the demise of their bonus rights due to Ritzler's alleged negligent representation. *See Hausser & Taylor, LLP v. Accelerated Sys. Integrations, Inc.*, Cuyahoga C.P. No. CV-02-468216 (hereinafter "MRK litigation").

*MRK Litigation*

{¶12} In May 2002, less than a month after H&T's filing of its defamation action, MRK joined the action as a plaintiff. MRK and H&T filed an amended complaint,

adding an additional count of breach of contract against ASI.   MRK later added Joseph

and his trust as defendants to the action (collectively "ASI defendants").

{¶13} With respect to the breach of contract claim, MRK alleged that ASI

unjustifiably abandoned the mandatory alternative dispute resolution procedures set forth

in the Separation Agreement regarding the bonus dispute, thereby constituting a breach

of the agreement.   MRK further sought specific performance of the alternative dispute

resolution provisions set forth in paragraph 5(a)(ii) of the Separation Agreement.   The

ASI defendants added the Kennedys as third-party defendants to the action and asserted

several counterclaims and third-party claims against them related to the bonus

calculation.   As for H&T, ASI and Joseph asserted several counterclaims against it,

namely, tortious interference with contract, fraud, civil conspiracy, negligent audit,

negligence, malicious prosecution, abuse of process, and an accounting, all stemming

from H&T's 1999 year-end audit for MRK and determination of the partners' bonus

rights.   The ASI defendants, however, later voluntarily dismissed without prejudice all

their counterclaims against MRK, the Kennedys, and H&T before the trial court entered

judgment on the bonus calculation.   H&T and MRK likewise subsequently dismissed

their defamation claims.

{¶14} The trial court ultimately appointed an independent accountant to resolve

the bonus calculation, who determined that Joseph and the Kennedys each owed

$882,923 plus interest to MRK.   In April 2004, the trial court confirmed the award and

awarded judgment in favor of MRK on its breach of contract claim.   The ASI

defendants subsequently appealed the decision to this court. We affirmed the trial court's confirmation of the award of $882,923 against the ASI defendants but found error in the date that the trial court used in calculating the prejudgment interest. *See Hausser & Taylor, LLP v. Accelerated Sys. Integration, Inc.,* 8th Dist. No. 84748, 2005-Ohio-1017. The Ohio Supreme Court subsequently declined to accept jurisdiction over the ASI defendants' appeal. *See Hausser & Taylor, LLP v. Accelerated Sys. Integration, Inc.,* 106 Ohio St.3d 1463, 2005-Ohio-3490, 830 N.E.2d 1170.

*The Underlying Malpractice Suit*

{¶15} ASI and the trust filed the original malpractice action against Ritzler on April 25, 2007.[1] Significant to our later discussion regarding statute of limitations, Joseph was added to the action as a plaintiff on February 8, 2008 when the parties filed an amended complaint. That action was ultimately voluntarily dismissed without prejudice shortly after Ritzler moved for summary judgment.

{¶16} On March 30, 2010, all three plaintiffs — Joseph, ASI, and the trust — refiled the dismissed malpractice claims in this case, alleging two counts. The only count that is relevant to this appeal, alleges the following:

> The Defendants, Ritzler and RCS, were engaged to represent these Plaintiffs in litigation to prosecute the above-mentioned claims against H&T, the Kennedys and MRK, to recover, amongst other things, the multi-million dollar bonus which should have been paid as a result of

---

[1] The failure to name Joseph individually as a plaintiff was apparently the subject of another legal malpractice action filed by Joseph. The lawsuit, *Accelerated Sys. Integration, Inc. v. Charles V. Longo Co. LPA,* Case No. CV-10-735444, was filed on August 30, 2010, but then voluntarily dismissed without prejudice on October 12, 2010.

MRK's 1999 performance. Ritzler evaluated and represented (to Joseph and H&T, amongst others) the bonus claim to be valued at $6 million or more.

In their representation of the Plaintiffs, the Defendants failed to exercise that degree of care and skill required by attorneys under the same or similar circumstances. They negligently advised these Plaintiffs of their legal rights and status; they failed to protect the statute of limitations for certain of the available claims, causing them to eventually become time-barred; and they negligently litigated those claims which were pursued to completion.

As a direct and proximate result of the combined and concurrent negligence of Defendants, and each of them, Plaintiffs suffered damages, including excessive and unnecessary costs and legal fees, a disastrously unsuccessful result in the litigation, the complete loss of viable and valuable legal claims, and other damages, in amounts will be proved at trial.

{¶17} With respect to the lost claims against H&T, the record reveals that there was a separate action later filed against H&T for the claims that had previously been voluntarily dismissed in the MRK litigation. But the appellants hired Charles Longo to pursue that action — not Ritzler — and those claims were ultimately found to be untimely. *See Accelerated Sys. Integration, Inc. v. Hausser & Taylor, LLP*, 8th Dist. No. 88207, 2007-Ohio-2113 (affirming the trial court's finding that the four-year statute of limitations applied and had already accrued on the claims). Ritzler, however, allegedly failed to properly advise the appellants on the time for refiling and erroneously believed that the claims against H&T could be pursued beyond a four-year statute of limitations period.

{¶18} In the underlying case, Ritzler again moved for summary judgment asserting several grounds as to why the appellants' malpractice claim failed as a matter of law, including (1) that ASI and the trust had no standing to recover any damages with respect to the bonus calculation under the Settlement Agreement, and (2) that Joseph —

the only party with standing — failed to commence his malpractice claim within the statute of limitations. Alternatively, Ritzler argued that, even if Joseph's claims were not time-barred, the doctrine of collateral estoppel barred any purported claims he had against H&T, and therefore any negligence in failing to timely refile claims against H&T caused no damage to Joseph.

{¶19} The trial court found all three of these arguments persuasive and granted Ritzler's motion for summary judgment. The appellants now appeal, raising a single assignment of error:

"The court erred in granting summary judgment as all issues were factual disputes for the jury."

{¶20} Within their single assignment of error, the appellants raise several sub-arguments challenging the trial court's judgment. We will address each argument.

## Standard of Review

{¶21} Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56. This rule was reaffirmed by *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 448, 663 N.E.2d 639 (1996):

> Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Parsons v. Fleming*, 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994), citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

{¶22} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments by the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987).

Standing and Privity

{¶23} ASI and the trust argue that the trial court erred in finding that they do not have standing to assert a legal malpractice claim related to the bonus dispute. We agree.

{¶24} To establish a cause of action for legal malpractice, one must show (1) an attorney-client relationship, (2) professional duty arising from that relationship, (3) breach of that duty, (4) proximate cause, and (5) damages. *Shoemaker v. Gindlesberger*, 118 Ohio St.3d 226, 2008-Ohio-2012, 887 N.E.2d 1167, ¶ 18.

{¶25} ASI and the trust argue that they were Ritzler's clients and therefore had standing to sue him for malpractice. They further contend that they stood in privity with Joseph for purposes of the bonus provision contained in the contract, thereby conferring them standing to assert Joseph's rights.

{¶26} It is well settled that a party not in privity may not bring an action on a contract as, "* * * the absence of 'privity' between the parties makes it difficult to impose any duty to the plaintiff upon the contract itself." Prosser and Keeton, *Torts*, Section 93, 667 (5th Ed.1984). Privity is defined as "'[t]he connection of relation between two parties, each having a legally recognized interest in the same subject

matter.'" *Sayyah v. Cutrell*, 143 Ohio App.3d 102, 111-112, 757 N.E.2d 779 (12th Dist.2001).

{¶27} Ritzler counters that the trial court properly granted summary judgment because any claim for malpractice related to the bonus dispute belongs solely to Joseph, not the other two plaintiffs — ASI and the trust. The rationale for their argument is simple: under the bonus provision, ASI and the trust have no legal entitlement to any bonus — only Joseph; therefore, because ASI and the trust have no entitlement to any bonus, they could not have suffered any damages by Ritzler's alleged negligence in pursuing Joseph's bonus rights. Relying on this proximate cause and damages argument, Ritzler contends that ASI and the trust do not have any standing to pursue a claim that belongs solely to Joseph.

{¶28} Ritzler further counters that privity does not apply in the instant case where ASI and the trust were actual clients of his — not mere third parties. He further argues that Joseph is the only "real party in interest" to recover under the bonus provision, and therefore only Joseph could claim to have sustained any damages as a result of alleged legal malpractice that allegedly caused the loss of profits.

{¶29} Whether a party has standing depends upon whether he has a "personal stake in the outcome of the controversy." *Middletown v. Ferguson*, 25 Ohio St.3d 71, 75, 495 N.E.2d 380 (1986) (citation omitted). "The requirement that a party have standing ensures that the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution."

(Internal quotation and citation omitted.) *Zuckerman v. Gray*, 11th Dist. No. 2008-T-0022, 2009-Ohio-1319, ¶ 12.

{¶30} Additionally, Civ.R. 17 requires every civil action to be prosecuted in the name of the real party in interest. *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 77, 701 N.E.2d 1002 (1998). The real party in interest is the party who will directly be helped or harmed by the outcome of the action. "The person must have more than an interest in the case. He or she must have some interest in the subject matter of the litigation or is the person who can discharge the claim on which the suit is brought." *Travelers Indem. Co. v. R. L. Smith Co.*, 11th Dist. No. 2000-L-014, 2001 Ohio App. LEXIS 1750, *8 (Apr. 13, 2001).

{¶31} Suffice it to say, the factual circumstances of this legal malpractice action are very unusual. Neither party cites any authority directly on point in support of their respective position. And while we find Ritzler's argument compelling on its face, we cannot overlook a critical fact of the outcome of MRK litigation: ASI, the trust, and Joseph *were all three found "jointly and severally" liable on the judgment* — the amount that was due to MRK under the bonus provision. *See Hausser & Taylor, LLP v. Accelerated Sys. Integration, Inc.*, 8th Dist. No. 84748, 2005-Ohio-1017, ¶ 8.

{¶32} The MRK litigation centered on the enforcement of paragraph 5 — the bonus provision — the same provision that Ritzler now contends limits any malpractice claim as belonging solely to Joseph. But given that the final judgment in the MRK bonus litigation implicitly recognized ASI and the trust as having standing to enforce the

bonus provision, and likewise be subject to liability under the provision, we find that they have a "legally recognized interest" under the bonus provision. Thus, while we do not agree that the three appellants are "one in the same," we find that ASI and the trust stand in privity with Joseph for the sake of the bonus provision. Ritzler should not now be able to claim otherwise for the sake of avoiding a malpractice action.

{¶33} Likewise, ASI and the trust have a personal stake in the outcome of the case in the pursuit of their own malpractice claim. Indeed, it only stands to reason that if ASI and the trust have already been treated as sharing the same rights and obligations as Joseph with respect to enforcement of the bonus provision, they have a right to pursue a malpractice claim against their own attorney for any profit that allegedly could have been recovered. We therefore find that the trial court erred in finding that Joseph is the only proper party with standing to assert a malpractice claim as it relates to the bonus calculation.

## Collateral Estoppel

{¶34} We now turn to the issue of collateral estoppel. The trial court found that the purported claims against H&T would have been barred by the doctrine of collateral estoppel because the issue of the bonus rights had already been conclusively determined in the MRK litigation. Finding that H&T could invoke the defense of collateral estoppel as to any claims asserted by the appellants, the trial court determined that the appellants could not establish any damages proximately caused by Ritzler's alleged failure to timely advise on the refiling of claims against H&T.

**{¶35}** The appellants argue that the trial court erroneously concluded that collateral estoppel would have barred claims against H&T. We agree.

**{¶36}** Under the doctrine of collateral estoppel, a party "is precluded from relitigating in a second action an issue that has been actually and necessarily litigated and determined in a prior action that was based on a different cause of action." *Miller v. Coldwell Banker Hunter Realty*, 8th Dist. Nos. 93529 and 93662, 2010-Ohio-5840, ¶ 20. To to be successful in a claim of collateral estoppel, a party must prove the following four elements: (1) the party against whom estoppel is sought was a party or in privity with a party to the prior action; (2) there was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (3) the issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and (4) the issue must have been identical to the issue involved in the prior suit. (Internal citations omitted.) *Id.* at ¶ 23-27.

**{¶37}** Ritzler's collateral estoppel argument fails to recognize that the appellants' claims against H&T are distinct and separate from the claims resolved in the MRK litigation. Indeed, it is undisputed that H&T had no obligation to pay any bonus under the Separation Agreement. H&T's role was simply to conduct the year-end audit. According to the appellants, H&T negligently performed this role. Additionally, the appellants asserted other claims against H&T that were not decided in the MRK litigation, such as civil conspiracy to defraud — a claim that the appellants' legal expert opined was "viable" based upon "the many instances of deviations from accepted

standards of care by an accountant in the shoes of H&T with respect to the bonus calculation."

**{¶38}** To the extent that the MRK litigation has already conclusively determined the appellants' rights under the bonus provision — specifically determining that Joseph owed money to MRK under the bonus provision — we do not find this as a bar on the legal malpractice claim related to lost claims against H&T. The gravamen of the appellants' malpractice action is that Ritzler negligently handled the MRK litigation, resulting in a "disastrous result." We do not agree that our affirmance of the trial court's determination of the bonus calculation is dispositive on the malpractice claim. Indeed, at the heart of the appellants' malpractice claim is that Ritzler failed to properly invoke the ADR mechanism in the Separation Agreement as opposed to subjecting the appellants to the common pleas court for resolving this dispute — a forum where they were allegedly prevented from presenting all of the alleged miscalculations for the appointed accountant's determination. This issue has not been decided. While we make no finding as to the merits of the appellants' claim, we do find that they have satisfied their burden to overcome summary judgment.

**{¶39}** Likewise, while we agree that a party cannot collaterally attack a valid, final judgment, we do not agree that the appellants' prosecution of their claims against H&T undermines the final judgment in the MRK litigation. *See Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 16-17. The claims against H&T have never been decided. Further, the appellants'

claim that Ritzler negligently represented them in the MRK litigation has never been decided. We therefore do not find that the bonus calculation itself decided in the MRK litigation is a bar to any claim against H&T.

Statute of Limitations

{¶40} The appellants also argue that the trial court erred in finding that Joseph's malpractice claim was time-barred. We agree in part.

{¶41} The statute of limitations for the filing of a legal malpractice claim is one year. R.C. 2305.11(A). An action for legal malpractice accrues on the later of two dates: (1) "when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney"; or (2) "*when the attorney-client relationship for that particular transaction or undertaking terminates.*" *Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398 (1989), citing *Omni-Food & Fashion, Inc. v. Smith* (emphasis added), 38 Ohio St.3d 385, 528 N.E.2d 941 (1988).

{¶42} Joseph does not dispute that the cognizable event for his malpractice claim occurred more than one year before his February 8, 2008 filing of the malpractice complaint against Ritzler. Rather, Joseph contends that the complaint was filed within one year from when the attorney-client relationship ended. On appeal, Joseph argues that the trial court erred in deciding this issue because it could not be decided as a matter of law. He argues that a genuine issue of material fact exists as to whether the

attorney-client relationship was still ongoing in February and March 2007 or even September of 2007[2] — all within the one year time period of when his lawsuit was filed on February 8, 2008.

*Termination of Attorney-Client Relationship*

**{¶43}** Generally, the determination of whether an attorney-client relationship has ended is a factual question to be resolved by the trier of fact. *Mobberly v. Hendricks*, 98 Ohio App.3d 839, 843, 649 N.E.2d 1247 (9th Dist.1994). As recognized by the Ohio Supreme Court, "the question of when an attorney-client relationship for a particular undertaking or transaction has terminated is necessarily one of fact." *Omni-Food & Fashion*, 38 Ohio St.3d at 388. But one party or the other may undertake affirmative actions that are so inconsistent with a continued relationship that the question of when an attorney-client relationship has ended may be taken away from the trier of fact, and decided as a matter of law. *Steindler v. Meyers, Lamanna & Roman*, 8th Dist. No. 86852, 2006-Ohio-4097, ¶ 11. Also, "where reasonable minds can come but to one conclusion from the evidence to determine when the attorney-client relationship ends, the termination may be decided as a matter of law." *McGlothin v. Schad*, 194 Ohio App.3d 669, 2011-Ohio-3011, 957 N.E.2d 810 (12th Dist.), citing *Trombley v. Calamunci, Joelson, Manore, Farah & Silvers*, LLP, 6th Dist. No. L-04-1138, 2005-Ohio-2105, ¶ 43.

---

[2] Joseph argued in his brief in opposition that the attorney-client relationship was ongoing until the Ohio Supreme Court declined jurisdiction over an appeal in September 2007.

*Particular Undertaking or Transaction*

**{¶44}** Before analyzing the issue of when the statute of limitations began to accrue based on a termination of the attorney-client relationship, we first must consider if Ritzler's representation embodied one or two separate undertakings or transactions. In specifying that a legal malpractice claim accrues when the attorney-client relationship for that particular transaction or undertaking terminates, the Ohio Supreme Court rejected an argument that "continued 'general' representation should toll the statute of limitations." *Omni-Food & Fashion*, 38 Ohio St.3d at 389. The "particular transaction" language was added to the termination rule to ensure that the purpose of the statute of limitations is served. Otherwise, without such a limitation, "a client with knowledge of an attorney's malpractice may unduly perpetuate the attorney's potential liability and exposure to suit." *Id.*

**{¶45}** In his motion for summary judgment, Ritzler argued that his representation of Joseph supporting the first count of the legal malpractice claim related to two separate undertakings or transactions: (1) his representation of Joseph regarding claims related to MRK and the Kennedys; and (2) his representation of Joseph regarding claims related to H&T. Contending that the representations were distinct and separate undertakings, Ritzler argued that accrual time for the statute of limitations for each one must be separately examined.

**{¶46}** Conversely, Joseph countered that the two representations could not be parsed out as Ritzler argues because they both stemmed from Ritzler's representation of

Joseph relating to the bonus calculation. Relying on Ritzler's own deposition testimony, Joseph pointed out that Ritzler even admitted that the claims of each were "offshoots" of the other and that Ritzler billed for both cases using the same case designation, namely, "H&T Contingency."

{¶47} Although we agree that Ritzler's representation of Joseph with respect to bonus-related claims against MRK/Kennedys and claims against H&T originated as a "particular undertaking," we find that it did not continue that way. Once Ritzler voluntarily dismissed any claims against H&T in the MRK bonus litigation, his alleged continued representation of the appellants with respect to their claims against H&T became separate from his continued representation of the appellants in resolving the bonus dispute against MRK. We find Joseph's hiring of Charles Longo to refile the claims against H&T as further support that any role that Ritzler had with the H&T matter was a separate undertaking from his representing the appellants in the MRK litigation. Thus, Ritzler's actions in relation to the MRK litigation cannot be grounds to toll the statute of limitations with respect to his alleged representation on the H&T matter. *See FDIC v. Alexander*, 78 F.3d 1103, 1106, 1110 (6th Cir.1996). Each representation must be separately examined. *See Antioch Litigation Trust v. McDermott Will & Emery L.L.P.*, 738 F.Supp.2d 758, 772 (S.D. Ohio 2010), citing *Alexander*, *supra* (the key date in determining the date of termination of a "particular transaction" is when the legal representation on the matter in question ceases, rather than all representation).

**{¶48}** Keeping in mind that the evidence must be construed in favor of Joseph, the nonmoving party, we now turn to each particular transaction to determine whether it can be decided as a matter of law that the attorney-client relationship terminated prior to February 8, 2007 — one year from when Joseph filed his complaint.

A.    *Representation Regarding H&T Claims*

**{¶49}** Ritzler contends that the attorney-client relationship terminated as a matter of law when the claims against H&T were voluntarily dismissed.   In the alternative, he argues that the relationship concluded as a matter of law when Joseph retained Charles Longo — and only Longo — to pursue claims against H&T.   Conversely, Joseph argues that the relationship did not terminate until August 29, 2007 when the Ohio Supreme Court declined jurisdiction over the appeal in the H&T litigation.[3]   Alternatively, he argues that at the very least, a genuine issue of material fact exists as to when the attorney-client relationship ended.

**{¶50}** While we agree that Ohio law generally recognizes that the retention of new counsel to pursue matters previously handled by a former attorney signifies that the attorney-client relationship with the former attorney has terminated, the facts of this case do not fall squarely within that precedent.   *See generally Zimmie,* 43 Ohio St.3d 54, 538 N.E.2d 398, paragraph six of the syllabus (affirmative acts sufficient to terminate the attorney-client relationship include the client retaining other counsel); *Taylor v. Oglesby,*

---

[3]    The Ohio Supreme Court declined jurisdiction and dismissed the appeal finding no conflict.   *See Accelerated Sys. Integration, Inc. v. Hausser & Taylor, LLP*, 114 Ohio St.3d 1514, 2007-Ohio-4285, 872 N.E.2d 953, and 114 Ohio St.3d 1502, 2007-Ohio-4285, 872 N.E.2d 946.

6th Dist. No. L-05-1064, 2006-Ohio-1225 (retention of new counsel to file an appeal terminated the attorney-client relationship). In this case, Joseph pointed to several actions or correspondence to or from Ritzler that were consistent with Ritzler still advising him with respect to the H&T matter, even after Charles Longo was retained to refile the action against H&T. The latest of these communications occurred on November 30, 2006, in a letter from Charles Longo to Ritzler that stated the following:

> Since my last correspondence to you, I have become aware you are continuing to represent Accelerated Systems and Michael Joseph. Over the last couple of months, Mr. Joseph advised me you would provide case law which supports your position that statute of limitations on the accounting malpractice claim is not time barred. Please forward those cases to me as soon as possible, if they exist.

{¶51} In his July 24, 2008 deposition, Ritzler responded to questions regarding the November 2006 letter from Longo and admitted that as of November 2006, he was still representing Joseph and ASI with respect to H&T issues. The record further contains a December 18, 2006 research memo conducted by a Ritzler associate regarding the statute of limitations for a claim of accounting malpractice that Ritzler believed he requested as a result of Longo's November 30, 2006 letter. Construing this evidence in a light most favorable to Joseph, we find that a genuine issue of material fact exists as to whether the attorney-client relationship was still ongoing in December 2006.

{¶52} But after December 18, 2006, there is absolutely no evidence that Ritzler was providing any counsel to Joseph with respect to the H&T matter. It is clear that Ritzler was neither advising Joseph in any capacity or doing any work in connection with the matter. *See Woodrow v. Heintschel*, 194 Ohio App.3d 391, 2011-Ohio-1840, 956

N.E.2d 855 (6th Dist.) (recognizing that attorney's cessation of all work and notice of withdrawal, despite not received by clients, constituted unambiguous acts terminating the attorney-client relationship). Joseph even acknowledged in his October 2008 deposition that Ritzler's involvement in pursuing any claim against H&T ceased. Specifically, Joseph testified as follows:

> Q. Well, when you discussed with Mr. Ritzler the role that he was going to play in the refiled case against Hausser & Taylor, what did you discuss that role would be or might be?
>
> A. Co-Counsel, supporting counsel, independent advisor.
>
> Q. And was there any role that he agreed to accept in the refiled case?
>
> A. Ultimately, he became nonresponsive. At the initial meeting he assured us that the statutes were not broken and that we had preserved all our rights and then was going to even produce some case law for us, and then we kept asking him for the case law and by his lack of continued responses, it became apparent that he did not want to participate going forward in representing me.

{¶53} Thus, while we disagree with Ritzler's contention that the attorney-client relationship terminated as a matter of law in April 2003, or even on September 27, 2005 when the claims were refiled, we do find that the relationship ended no later than December 18, 2006. *See*, *e.g.*, *Triplett v. Benton*, 10th Dist. No. 03AP-342, 2003-Ohio-5583 (client's pro se filings and cessation of all work by attorney evidenced termination of attorney-client relationship); *Trickett v. Krugliak*, *Wilkins, Griffiths & Dougherty Co., L.P.A.*, 12th Dist. No. 2000-P-0105, 2001-Ohio-3927 (attorney-client relationship terminated when the underlying action has concluded, the attorney

exhausted all remedies in the case, and declined to provide additional legal services on related issues).

**{¶54}** Given that Ritzler was never the counsel of record on the refiling of the claims against H&T, the idea that he was serving as co-counsel up until August 2007 — the date that the Supreme Court declined to hear the appeal —   is simply not supported by the record.   Nor is it a logical conclusion.   *See Koerber v. Levey & Gruhin*, 9th Dist. No. 21730, 2004-Ohio-3085 (nonsensical to think that attorney-client relationship lasted until the Supreme Court denied certiori of the appeal when attorney's representation on the underlying action concluded two years earlier and client retained new counsel on appeal).   Accordingly, we find that reasonable minds could only conclude that the attorney-client relationship concluded no later than December 2006, if not earlier.   Therefore, Joseph's malpractice claim related to H&T matters is time-barred.

B.      *Representation of Matters Related to MRK/the Kennedys*

**{¶55}** In his motion for summary judgment, Ritzler argued that the attorney-client relationship with respect to the refiling of any counterclaims against the Kennedys or MRK terminated when those counterclaims were dismissed in April 2003.   He further argued that the termination of the attorney-client relationship with respect to Joseph's defense in the MRK litigation terminated as a matter of law on January 8, 2007, when Joseph retained new counsel, Dale Pelozy, to complete the MRK matter.   The record reveals that Pelozy filed an appearance as counsel through a January 8, 2007 request to

enter judgment. There are no further filings made by Ritzler on Joseph's behalf after Pelozy's appearance.

{¶56} We find, however, that genuine issues of material fact exist that preclude the granting of summary judgment with respect to Ritzler's representation of Joseph in the MRK litigation. First, contrary to Ritzler's implied assertion, his representation of Joseph regarding the pursuit of affirmative claims against the Kennedys and MRK and his defense of Joseph in the MRK litigation constitute the same transaction or undertaking. Indeed, Ritzler was hired to represent Joseph with respect to his rights under the bonus provision as it related to these parties. *See Thomas v. Kramer*, 194 Ohio App.3d 70, 2011-Ohio-1812, 954 N.E.2d 1235, ¶ 18 (8th Dist.) (recognizing that particular transaction encompasses all dealings related to the proceeding in which the alleged malpractice occurred that are not of a general nature). To the extent that the counterclaims were dismissed and the MRK litigation proceeded against these same parties, we find it unreasonable to assume that Joseph would know that Ritzler was no longer representing him with respect to any future claims against these parties. Moreover, unlike the analysis with respect to the H&T claims, Joseph never retained new counsel to pursue these counterclaims.

{¶57} Second, the record reveals that Ritzler sent Joseph a billing statement for work that he performed in March and April 2007, albeit for minimal time and expense, in connection with the MRK litigation. Specifically, the invoice indicates that Ritzler was billing for "receipt and review of journal entry" regarding the scheduling of a

pretrial, a status conference, and his corresponding letters sent to Joseph advising of the matters. And while Joseph contends that this billing raises an issue of fact with respect to Ritzler's representation regarding H&T matters, our review of the MRK litigation docket reveals that the work identified in the billing relates solely to the MRK litigation. But based on the fact that Ritzler was billing Joseph for work performed in connection with the MRK litigation in February and March 2007, we find that a genuine issue of material facts exists as to when the attorney-client relationship terminated.

{¶58} Accordingly, the trial court erred in granting summary judgment in favor of Ritzler with respect to whether Joseph's malpractice claim regarding the MRK litigation was time-barred. The trial court, however, properly granted summary judgment with respect to Joseph's malpractice claim regarding the lost H&T claims because the attorney-client relationship regarding that undertaking terminated more than one year from when Joseph filed his legal malpractice suit.

## Conclusion

{¶59} Applying a de novo standard of review, we find that the trial court erred in holding that ASI and the trust lacked standing to assert a legal malpractice claim against Ritzler related to the bonus calculation. Having already been found liable under the bonus provision, we find that ASI and the trust have a legally recognized interest in the bonus provision of the Separation Agreement. We likewise find that the trial court erred in holding that the doctrine of collateral estoppel barred Joseph's legal malpractice claim as it pertained to Ritzler's representation regarding claims against H&T.

**{¶60}** We further find that summary judgment was not proper with respect to Joseph's malpractice claim related to Ritzler's representation in the MRK litigation because a genuine issue of material fact exists as to the termination date of the attorney-client relationship. We do find, however, that the trial court properly determined that Ritzler's representation with respect to any claims against H&T terminated more than one-year prior to Joseph filing his malpractice claim.

**{¶61}** Judgment reversed and case remanded for further proceedings consistent with this opinion.

It is ordered that appellants recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
MARY EILEEN KILBANE, J., CONCUR